IN THE

# ARIZONA COURT OF APPEALS
### DIVISION TWO

---

THE STATE OF ARIZONA,
*Appellee,*

*v.*

RONALD JAMES SISCO II,
*Appellant.*

No. 2 CA-CR 2014-0181
Filed July 20, 2015

---

Appeal from the Superior Court in Pima County
No. CR20131500001
The Honorable Howard Fell, Judge Pro Tempore

**REVERSED AND REMANDED**

---

COUNSEL

Mark Brnovich, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By Jonathan Bass, Assistant Attorney General, Tucson
*Counsel for Appellee*

Steven R. Sonenberg, Interim Pima County Public Defender
By David J. Euchner and Walter I. Gonçalves, Jr., Assistant Public
Defenders, Tucson
*Counsel for Appellant*

---

**OPINION**

---

Chief Judge Eckerstrom authored the opinion of the Court, in which Presiding Judge Miller concurred and Judge Espinosa dissented.

---

E C K E R S T R O M, Chief Judge:

¶1        Following a bench trial, appellant Ronald Sisco II was convicted of child abuse, possession of drug paraphernalia, possession of marijuana for sale, and production of marijuana. The trial court imposed concurrent prison terms, the longest of which are 3.5 years. On appeal, Sisco challenges the denial of his motion to suppress and the sufficiency of the evidence supporting his conviction for child abuse.

¶2        We address here the effect of the Arizona Medical Marijuana Act (AMMA), A.R.S. §§ 36-2801 through 36-2819, on determinations of probable cause. That Act renders possession, cultivation, and use of marijuana lawful under some circumstances. Accordingly, those circumstances—not the mere possession itself—now determine whether such activity is criminal or permitted under state law. For this reason, and for the reasons stated below, we hold that the scent of marijuana, standing alone, is insufficient evidence of criminal activity to supply probable cause for a search warrant. We emphasize this holding is a limited one. Probable cause can arise when the scent of marijuana is coupled with additional, commonly evident facts or contextual information suggesting a marijuana-related offense. However, no such information was presented here. We therefore reverse the denial of Sisco's suppression motion and remand the case to the trial court. Our disposition makes it unnecessary to address the evidence supporting his conviction of child abuse.

### Factual and Procedural Background

¶3        When a search warrant is challenged based on a lack of probable cause, we consider only the evidence presented to the magistrate at the time the search warrant was issued. *See State v.*

*Jung*, 19 Ariz. App. 257, 258-59, 506 P.2d 648, 649-50 (1973); *see also State v. Crowley*, 202 Ariz. 80, ¶ 7, 41 P.3d 618, 621 (App. 2002). The initial search warrant affidavit stated that three police officers had smelled, from a street and sidewalk, an "overpowering" or "strong odor of fresh marijuana" coming from one particular warehouse in a four-unit complex: Unit 18. Based on this information, the magistrate concluded there was probable cause of unlawful possession of marijuana and issued a warrant. When the officers entered the building, they found it was vacant and contained no marijuana.

¶4       The same police officer who had applied for the first search warrant then applied for a second warrant for a nearby building, Unit 20, which was separated by a wall and locked gate. He avowed that after he and other officers had entered the property of Unit 18 they had been able to "narrow . . . down" the source of the odor and exclude other potential sources. The magistrate issued an amended warrant for Unit 20, again based only on information about the scent. Inside that warehouse, officers discovered growing equipment and dozens of marijuana plants. In a separate portion of the building that served as a residence, they also found several items indicating that a young child lived there.

¶5       Personal property found in Unit 20 established that Sisco was one of its occupants, and he subsequently was charged with several criminal offenses noted above. He filed a suppression motion challenging the search warrant on numerous grounds, among them that the scent of marijuana failed to establish probable cause of criminal activity. After an evidentiary hearing, the trial court denied the motion, finding the AMMA had no impact on the probable-cause determination in this case. This appeal followed Sisco's convictions and sentences.

## Discussion

¶6       As he did below, Sisco challenges the suppression ruling because it was based on case law that has been abrogated by the AMMA. The state maintains the trial court did not abuse its discretion because the odor of marijuana is still sufficient to support a finding of probable cause under all circumstances.

**¶7**         Absent exceptions not applicable here, a search warrant supported by probable cause is required by the Fourth Amendment of the United States Constitution and article II, § 8 of the Arizona Constitution.  *See State v. Hyde*, 186 Ariz. 252, 268, 921 P.2d 655, 671 (1996); *State v. Adamson*, 136 Ariz. 250, 257, 665 P.2d 972, 979 (1983). Once issued, a search warrant is presumed to be valid, and a defendant challenging it for lack of probable cause carries the burden of going forward below.  *Hyde*, 186 Ariz. at 268, 270, 921 P.2d at 671, 673.  A magistrate's finding of probable cause will be upheld when there is a substantial basis for it.  *Id.* at 272, 921 P.2d at 675; *State v. Ballinger*, 19 Ariz. App. 32, 34-35, 504 P.2d 955, 957-58 (1973); *State v. McMann*, 3 Ariz. App. 111, 112-13, 412 P.2d 286, 287-88 (1966).  We will not disturb a trial court's ruling on a motion to suppress unless the court clearly has abused its discretion.  *State v. Stanley*, 167 Ariz. 519, 525, 809 P.2d 944, 950 (1991).  However, an error of law made in the process of making a discretionary determination constitutes an abuse of discretion.  *State v. Simon*, 229 Ariz. 60, ¶ 7, 270 P.3d 887, 889 (App. 2012); *State v. Noceo*, 223 Ariz. 222, ¶ 3, 221 P.3d 1036, 1038 (App. 2009).  And, whether officers presented information legally sufficient to establish probable cause is a question of law that we review de novo.  *See State v. Blackmore*, 186 Ariz. 630, 632, 925 P.2d 1347, 1349 (1996); *Frimmel v. Sanders*, 236 Ariz. 232, ¶ 25, 338 P.3d 972, 978 (App. 2014).

## A.  Constitutional Analysis

### 1.  Probable Cause

**¶8**         "Probable cause to conduct a search exists when 'a reasonably prudent person, based upon the facts known by the officer, would be justified in concluding that the items sought are connected with criminal activity and that they would be found at the place to be searched.'"  *State v. Spears*, 184 Ariz. 277, 285, 908 P.2d 1062, 1070 (1996), *quoting State v. Carter*, 145 Ariz. 101, 110, 700 P.2d 488, 497 (1985); *accord State v. Prince*, 160 Ariz. 268, 272, 772 P.2d 1121, 1125 (1989).  This is the test by which we determine whether a "fair probability" of criminal activity exists under the Fourth Amendment standard articulated in *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  *State v. Buccini*, 167 Ariz. 550, 556, 810 P.2d 178, 184 (1991). Although probable cause is a fluid, nontechnical concept, *id.* at 186,

810 P.2d at 558; *State v. Emery*, 131 Ariz. 493, 505-06, 642 P.2d 838, 850-51 (1982), it is not without limits. Our case law establishes boundaries between circumstances that support a justified belief in criminal activity, on the one hand, and those that provide mere suspicion or reasonable grounds for further investigation, on the other. *See State v. Dupuy*, 116 Ariz. 151, 155, 568 P.2d 1049, 1053 (1977); *see also Buccini*, 167 Ariz. at 557, 810 P.2d at 185.

¶9 When assessing probable cause, comparison to the reasonable-suspicion standard is instructive. Reasonable suspicion for traffic stops cannot rest solely on "circumstances or factors that do not reliably distinguish between suspect and innocent behaviors . . . because they may cast too wide a net and subject all travelers to 'virtually random seizures.'" *State v. Sweeney*, 224 Ariz. 107, ¶ 22, 227 P.3d 868, 874 (App. 2010), *quoting Reid v. Georgia*, 448 U.S. 438, 441 (1980) (per curiam). The facts must be "specific, distinct, or 'particular' to the suspect" so as to "reduce the risk of sweeping in a substantial number of innocent travelers." *State v. Evans*, 237 Ariz. 231, ¶¶ 10, 17, 349 P.3d 205, 208, 209 (2015). A description of "entirely ordinary" activity does not give rise to a reasonable, particularized suspicion. *Id.* ¶ 12. Probable cause is a higher standard than reasonable suspicion. *Florida v. J.L.*, 529 U.S. 266, 272 (2000); *State v. O'Meara*, 198 Ariz. 294, ¶ 10, 9 P.3d 325, 327 (2000). It therefore follows that when a description of circumstances "fits any number of other individuals not engaged in criminal activity," it fails to establish probable cause. *State v. Swanson*, 172 Ariz. 579, 586, 838 P.2d 1340, 1347 (App. 1992).

¶10 Our supreme court has recognized this principle. In *Drury v. Burr*, the court announced that "[w]here there is more than one inference equally reasonable[,] then probable cause does not exist, but where one inference is more reasonable than another and is on the side of guilt, then probable cause may be said to exist." 107 Ariz. 124, 125, 483 P.2d 539, 540 (1971).[1] Similarly, in *Maricopa*

---

[1] Although *Drury* involved a preliminary hearing testing whether there was probable cause for an arrest, "[g]enerally probable cause to arrest and probable cause to search are synonymous." *State v. Sardo*, 112 Ariz. 509, 515, 543 P.2d 1138, 1144

*County Juvenile Action No. J-84984*, the court held that "probable cause requires a reasonably prudent person to find more probably than not the existence of the contested fact." 138 Ariz. 282, 284, 674 P.2d 836, 838 (1983). On several other occasions, our high court has indicated that probable cause is lacking unless the facts suggest that criminal activity is "more probable than not." *State v. Will*, 138 Ariz. 46, 49, 672 P.2d 1316, 1319 (1983); *State v. Million*, 120 Ariz. 10, 15, 583 P.2d 897, 902 (1978); *State v. Sardo*, 112 Ariz. 509, 515, 543 P.2d 1138, 1144 (1975).[2]

¶11     The common law developed the concept of probable cause "'[l]ong before the law of probabilities was articulated as such.'" *State v. Espinosa-Gamez*, 139 Ariz. 415, 417, 678 P.2d 1379, 1381 (1984), *quoting Gates*, 462 U.S. at 231. Yet the "'reasonable,'" *Will*, 138 Ariz. at 49, 672 P.2d at 1319, *quoting State v. Heberly*, 120 Ariz. 541, 544, 587 P.2d 260, 263 (App. 1978), "responsible," *State v. Superior Court*, 149 Ariz. 269, 275, 718 P.2d 171, 177 (1986), "'prudent,'" *Spears*, 184 Ariz. at 285, 908 P.2d at 1070, *quoting Carter*, 145 Ariz. at 110, 700 P.2d at 497, and "'cautio[us],'" *State v. Summerlin*, 138 Ariz. 426, 431, 675 P.2d 686, 691 (1983), *quoting United States v. Lucarz*, 430 F.2d 1051, 1055 (9th Cir. 1970), person employed in the analysis is necessarily someone who is concerned not only with the potential inferences of criminal activity that might be drawn from certain facts, but also with the need to safeguard personal rights and minimize false-positives. *See State v. Gunter*, 100 Ariz. 356, 361, 414 P.2d 734, 738 (1966) (recognizing standard's role

---

(1975), *citing State v. Raymond*, 21 Ariz. App. 116, 119, 516 P.2d 58, 61 (1973).

[2]We recognize that this is not the exclusive formulation for the definition of probable cause. *See State v. Wolfe*, 137 Ariz. 133, 134, 669 P.2d 111, 112 (App. 1983) (noting multiplicity of formulations); *see also Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013) (emphasizing probable cause cannot be reduced to precise formulation such as preponderance of evidence); *Ornelas v. United States*, 517 U.S. 690, 695 (1996) ("Articulating precisely what 'reasonable suspicion' and 'probable cause' mean is not possible."). But all such formulations attempt to distinguish lawful and unlawful activity.

in balancing "the individual interest in immunity from police interference and the community's interest in law enforcement"). Accordingly, our supreme court has emphasized that more intrusive investigative measures such as detentions or searches cannot be used to dispel police suspicions aroused by apparently lawful behavior. *See State v. Richcreek*, 187 Ariz. 501, 504, 930 P.2d 1304, 1307 (1997) (disapproving prior jurisprudence which had stated that police officers who confront "'strange or unusual activities . . . should satisfy [themselves] as to the innocence of the activity by all reasonable, lawful means'"), *quoting State v. Jarzab*, 123 Ariz. 308, 311, 599 P.2d 761, 764 (1979).

¶12 Although the probable-cause standard might occasionally disturb the innocent, *Gates*, 462 U.S. at 243 n.13, it is not designed to do so as a matter of course, turning a blind eye to lawful activities and seeing instead only potential crimes. Our state has long recognized that the standard is not met when "slight reflection" would suggest to an ordinarily cautious and prudent person that those suspected of an offense "might have been peaceable and respectable people." *Wiley v. State*, 19 Ariz. 346, 354, 170 P. 869, 873 (1918); *see, e.g.*, *Ex parte Beaver*, 23 Ariz. 24, 26, 201 P. 94, 95 (1921) (finding no probable cause for arrest when noncriminal explanations for facts were reasonable assumptions, and evidence failed to show any crime had been committed).

¶13 When mistakes are made, "'the mistakes must be those of reasonable [people], acting on facts leading sensibly to their conclusions of probability.'" *State v. Pederson*, 102 Ariz. 60, 66, 424 P.2d 810, 816 (1967), *quoting Brinegar v. United States*, 338 U.S. 160, 176 (1949). In other words, the circumstances should be "'sufficiently strong *in themselves* to warrant a cautious [person] in believing the accused guilty.'" *State v. Dixon*, 153 Ariz. 151, 153, 735 P.2d 761, 763 (1987), *quoting Monroe v. Pape*, 221 F. Supp. 635, 642-43 (N.D. Ill. 1963) (emphasis added). For this reason, we must distinguish "[f]acts that would cause the officer to investigate the matter further . . . from facts that support a finding of probable cause." *Buccini*, 167 Ariz. at 559, 810 P.2d at 187 (Cameron, J., specially concurring).

## 2. Effect of AMMA

¶14      In *State v. Baggett*, we declined to address whether the AMMA had altered the "'plain smell' standard" establishing probable cause for a search based on the scent of marijuana. 232 Ariz. 424, ¶ 16, n.10, 306 P.3d 81, 84, 85 n.10 (App. 2013). Here, with the issue fully argued below and on appeal, we resolve the question with reference to fundamental and longstanding principles of the law of search and seizure.

¶15      For many decades, Arizona law strictly criminalized all possession of marijuana. *See* 1987 Ariz. Sess. Laws, ch. 307, § 18; 1981 Ariz. Sess. Laws, ch. 264, § 8 (former A.R.S. § 13-3405). Our courts therefore repeatedly held that the scent of marijuana provided probable cause to believe a criminal offense had been committed. *E.g.*, *State v. Decker*, 119 Ariz. 195, 197, 580 P.2d 333, 335 (1978); *State v. Harrison*, 111 Ariz. 508, 509, 533 P.2d 1143, 1144 (1975); *State v. Mahoney*, 106 Ariz. 297, 301-02, 475 P.2d 479, 483-84 (1970); *State v. Raymond*, 21 Ariz. App. 116, 119, 516 P.2d 58, 61 (1973); *State v. McGuire*, 13 Ariz. App. 539, 541, 479 P.2d 187, 189 (1971). Given the substance's "distinctive odor," *Raymond*, 21 Ariz. App. at 119, 516 P.2d at 61, a person familiar with it would recognize it as such and thereby know that a crime involving marijuana had occurred. *McGuire*, 13 Ariz. App. at 540-41, 479 P.2d at 188-89. In this way, the scent of marijuana had the same evidentiary impact as an item of contraband falling under the plain-view or plain-feel doctrines: with "its incriminating character . . . immediately apparent" to a trained law enforcement officer, perception alone provided probable cause for a search, so long as the officer also was in a lawful position to perceive and access the item. *Baggett*, 232 Ariz. 424, ¶ 16, 306 P.3d at 85; *see State v. Morrow*, 128 Ariz. 309, 312, 625 P.2d 898, 901 (1981); *State v. Ahumada*, 225 Ariz. 544, ¶ 15, 241 P.3d 908 (App. 2010).

¶16      With the 2010 passage of the AMMA, this rationale no longer applies. "Medical marijuana use pursuant to AMMA is lawful under Arizona law." *Reed-Kaliher v. Hoggatt*, 237 Ariz. 119, ¶ 17, 347 P.3d 136, 140 (2015). The possession of marijuana is not illegal per se, *State ex rel. Montgomery v. Harris*, 234 Ariz. 343, ¶ 16, 322 P.3d 160, 162 (2014), and therefore its scent alone does not

disclose whether a crime has occurred. Medical marijuana dispensaries may now grow an unspecified number of marijuana plants in an off-site facility. *See* §§ 36-2804(B)(1)(b)(ii), 36-2806(E). A designated caregiver may cultivate up to twelve plants for each patient and may serve up to five patients, for a total of sixty plants. § 36-2801(1)(b)(ii), (5)(d). A qualifying patient likewise is authorized to possess 2.5 ounces of marijuana and might also be allowed to grow up to twelve marijuana plants. §§ 36-2801(1)(a), 36-2804.02(A)(3)(f). Indeed, thousands of Arizonans have acquired the authorization to possess marijuana in one or more of these ways. *See* Arizona Department of Health Services, *Arizona Medical Marijuana Act (AMMA) End of Year Report* (2014) (noting 63,417 active cardholders, with nearly 2,000 patients and designated caregivers authorized to cultivate).[3]

¶17        Despite these developments, the state maintains the odor of marijuana still supplies probable cause to suspect that an offense has been committed under § 13-3405, both as a general matter of law and under the facts of this particular case.[4] We disagree on both points.

---

[3]The department is required to furnish this annual report to the legislature pursuant to § 36-2809.

[4]Possession of marijuana remains unlawful under federal law. 21 U.S.C. §§ 812 sched. I(c)(10), 844(a). Herein, we address only the effect of the AMMA on investigations of crimes under Arizona law by state officials. *Cf. Commonwealth v. Craan*, 13 N.E.3d 569, 577 (Mass. 2014) (declining to allow state actors to circumvent voter initiative by claiming enforcement of federal law). We also emphasize that this case does not present the question of whether the scent of marijuana provides reasonable suspicion to suspect a criminal offense and perform an investigatory detention under *Terry v. Ohio*, 392 U.S. 1 (1968), and we do not purport to decide that issue here. We do observe, however, that the AMMA does not authorize the use of marijuana in public, § 36-2802(C)(2), and therefore its smoke emanating from a public area would still provide probable cause for arrest and reasonable suspicion for an investigatory detention.

### a. General Effect

¶18 When a law enforcement officer is aware of certain items in a place to be searched but is unsure about their legal status, "the critical question is whether such items [are] connected with . . . *criminal activity*." *Buccini*, 167 Ariz. at 556, 810 P.2d at 184. Unless the items are "'inherently criminal,'" the absence of any additional facts suggesting a criminal connection renders the discovery of those items insufficient to support a finding of probable cause. *Id.* at 557, 810 P.2d at 185.

¶19 The purpose of the AMMA is to "make a distinction between the medical and nonmedical uses of marijuana." Initiative Measure, Prop. 203, § 2(G) (2010). In passing the Act, Arizona voters intended to grant marijuana a status comparable to that of prescription drugs: legal when possessed for medical purposes, in accordance with therapeutic directives and the law, and otherwise prohibited. As our supreme court has recently observed, "voters established as public policy that qualified patients cannot be penalized or denied any privilege as a consequence of their AMMA-compliant marijuana possession or use." *State ex rel. Polk v. Hancock*, 237 Ariz. 125, ¶ 9, 347 P.3d 142, 146 (2015).

¶20 Under our current statutory regime, the odor of marijuana does indicate the presence of a substance that might be possessed illegally. However, a reasonable, prudent, and cautious person could not, in the absence of further information, form a well-founded belief that a criminal offense was committed. Just as the possession of a prescription drug does not provide probable cause to suspect a drug offense under A.R.S. § 13-3406(A)(1), the mere scent of marijuana does not provide probable cause to suspect a crime under § 13-3405. A contrary conclusion would erase the distinction between lawful and unlawful marijuana at the heart of the AMMA, and it would authorize dragnet police practices that would capture "any number of . . . individuals not engaged in criminal activity." *Swanson*, 172 Ariz. at 586, 838 P.2d at 1347.[5]

---

[5] The AMMA anticipates that cardholders will carry their identification cards with them in order to enjoy a presumption of

**¶21** The state nevertheless insists that scent alone suggests criminal activity because the odds remain "overwhelming" that marijuana is possessed illegally. But the state presented no evidence either to the magistrate or the trial court supporting this intuition in the era of the AMMA. In the absence of such data, and given that hundreds of Arizonans and scores of dispensaries now have permission to lawfully cultivate or store marijuana, the magistrate had no basis to assume that most warehouses currently containing marijuana in Arizona do so illegally. The state supports its intuition about the likelihood of marijuana being possessed illegally by dividing the number of AMMA cardholders by the entire population of Arizona. But not all residents of Arizona are users of marijuana. The correct comparison would be between the number of people who use marijuana illegally and the number of people who use marijuana pursuant to the AMMA. The state provided no information below that would shed light on that more relevant proportion.

**¶22** Assuming arguendo that the state could compile data demonstrating that marijuana still is most often possessed illegally, this would not necessarily resolve the probable-cause question we face here. Although *Gates* requires a "fair probability that contraband or evidence of a crime will be found in a particular place," this standard simply "reaffirm[s] the totality-of-the-circumstances analysis that traditionally has informed probable cause determinations." 462 U.S. at 238. Among those circumstances

---

legal use, *see* § 36-2811(A)(1), that law enforcement officers will use a web-based verification system to confirm cardholders' status once that card is presented, *see* §§ 36-2801(16), 36-2807(A), (B), and that dialogue between officers and members of the public will often involve the AMMA. *See* § 36-2816(E) (providing civil penalty for false statements about medical marijuana "to avoid arrest or prosecution"). As we previously indicated, however, this case does not present the question of whether the scent of marijuana provides reasonable suspicion to suspect a criminal offense and perform an investigatory stop.

that must be considered in Arizona are: (1) that marijuana is not necessarily contraband, and (2) those who possess it consistent with the AMMA are granted broad statutory protections against the loss of "any right or privilege" for permissible activity. § 36-2811(B).[6] As *Gates* emphasized, the relevant inquiry in a probable-cause analysis is "the degree of suspicion that attaches" to a particular type of activity. 462 U.S. at 243 n.13.

**¶23** In Arizona, the degree of suspicion that now attaches to the possession of a potentially legal plant, much like the possession of a potentially legal pill, is comparatively modest in the absence of any information about the status of the person or entity possessing it. That conclusion is not altered by the fact that marijuana has hitherto been illegal under all circumstances and that law enforcement officers may therefore have understandably developed practices in accord with that now-outdated assumption. As our own supreme court made clear in *Richcreek*, law enforcement officers are not entitled to search everyone they deem suspicious in order to confirm the lawfulness of that person's conduct. 187 Ariz. at 504, 930 P.2d at 1307. Rather, officers must be able to make some particularized showing that distinguishes a mere possibility that a person may have committed a crime from a "fair probability" that the search will provide evidence of criminal activity. *Gates*, 462 U.S. at 238.

**¶24** "'[T]he ultimate touchstone of the Fourth Amendment is "reasonableness."'" *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011), *quoting Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). Reasonableness depends on balancing the public interest, or the legitimate needs of law enforcement, and the individual's right to privacy and freedom from official interference. *See United States v. Knights*, 534 U.S. 112, 118-19 (2001); *Jarzab*, 123 Ariz. at 311, 599 P.2d at 764.

---

[6]In our discussion in Section B, *infra*, we separately analyze the AMMA's specific provisions that preclude a finding of probable cause based on factors that fail to distinguish lawful from unlawful marijuana-related conduct.

¶25 Demanding some circumstantial evidence of criminal activity beyond the mere scent of marijuana strikes that reasonable balance. It preserves all individuals' rights to privacy under article II, § 8 of our state constitution; it protects the rights of those who choose to use medical marijuana in accord with the AMMA, as specifically required by the provisions of that statutory scheme; it protects the medical privacy, generally, of AMMA cardholders; and it also preserves the privacy rights of those whose property might be located nearby or occasionally host those who use medical marijuana, *see* § 36-2811(D)(2).

¶26 At the same time, requiring such additional evidence of criminality does little to impair the important competing interest of law enforcement in interdicting criminal activity. Our state officers are trained to identify and skillfully investigate circumstances that would readily support a reasonable belief that marijuana is not likely to be lawfully possessed. *See Gates*, 462 U.S. at 243 n.13; *State v. Hutton*, 110 Ariz. 339, 341, 519 P.2d 38, 40 (1974). For instance, even with the AMMA's passage, the odor of burnt marijuana in public or in an automobile still suggests a crime has occurred. *See* § 36-2802(C)(2), (D). And police can easily develop facts about places where marijuana is being grown or stored that suggest the activity there is criminal, whether from their own observations, consensual encounters, or information supplied by informants. *E.g.*, *State v. Castilleja*, 192 P.3d 1283, 1292 (Or. 2008). In short, an odor-plus standard for probable cause is a manageable way to distinguish probable criminal behavior from noncriminal activity, and making this distinction is necessary to uphold the integrity of our constitutional and statutory rights.

¶27 By contrast, were probable cause established by odor alone, then law enforcement officers could invade properties haphazardly, without collecting—and even disregarding—facts bearing on whether possession of the marijuana in question is permitted. *See, e.g.*, *People v. Fisher*, 117 Cal. Rptr. 2d 838, 839, 841 (Ct. App. 2002) (holding search warrant authorized search of residence, even though officers had seen permissible amount of marijuana and resident produced medical marijuana certificate before search was executed). Indeed, the record before us confirms

at least one instance where police entered a building only to find the activity there was lawful under the AMMA. "[I]t has happened," as an officer admitted. A sergeant with the Tucson Police Department further acknowledged that, although it is incumbent on officers to collect some additional facts bearing on whether marijuana-related activity is allowed by the AMMA, the department's "protocol" is to make those determinations "post facto," after obtaining and executing a search warrant.

¶28    Were we to adopt the state's suggestion that scent alone furnishes probable cause of a crime, medical marijuana patients would become second-class citizens, losing their rights to privacy and security, including privacy within their own homes.[7] Any patient with a detectable amount of marijuana would be subject to a search. We therefore hold that the odor of marijuana, whether burnt or unburnt, is insufficient by itself to establish probable cause of a crime under Arizona law or a substantial basis for a search warrant sought for a violation of such.

¶29    This holding accords with well-reasoned jurisprudence from several other jurisdictions. *See, e.g.*, *State v. Crocker*, 97 P.3d 93, 96 (Alaska Ct. App. 2004) ("[T]he search warrant application can not rely solely on the fact that someone is in possession of marijuana . . . [but] must provide an affirmative reason to conclude that the possession is illegal . . . ."); *Commonwealth v. Canning*, 28 N.E.3d 1156, 1165 (Mass. 2015) ("[A] search warrant affidavit setting out facts that simply establish probable cause to believe the owner is growing marijuana on the property in question, without more, is insufficient to establish probable cause to believe that the suspected cultivation is a crime."); *Castilleja*, 192 P.3d at 1291 ("[I]ssue . . . is not whether there was probable cause to believe that *any* marijuana would be

---

        [7]Although the record here was unclear whether police were aware of the dual use of the warehouse as a residence, its residential character does not affect our analysis of probable cause. We do not address whether the residential portion of the building was entitled to greater privacy protection under article II, § 8 of our state constitution. *See State v. Bolt*, 142 Ariz. 260, 263-65, 689 P.2d 519, 522-24 (1984).

found in defendant's house but, rather, whether . . . *an unlawful amount* of marijuana . . . would be found there.").

¶30 In the context of warrant practice, a substantial basis for a warrant is lacking when "the magistrate's procedures in determining whether there was probable cause d[o] not adequately safeguard the defendant's constitutional rights." *Hyde*, 186 Ariz. at 269, 921 P.2d at 672. When a magistrate makes no effort to discriminate between lawful and unlawful marijuana possession, as occurred here, an individual's constitutional rights to privacy are not adequately safeguarded. *See Canning*, 28 N.E.3d at 1166 n.16 (affirming suppression when "the affidavit reads as though the [medical marijuana] act did not exist"). Accordingly, although Sisco himself does not fall within the AMMA, the exclusionary rule nonetheless operates in his favor to preserve the constitutional rights of all law-abiding people. "Evidence obtained by police officers in violation of the Fourth Amendment is excluded at trial in the hope that the frequency of future violations will decrease." *Stone v. Powell*, 428 U.S. 465, 492 (1976).

### b. Case-Specific Facts

¶31 The state and our dissenting colleague further contend that the probable-cause determination here did not rest exclusively on the scent of marijuana. The state points out that the search warrant affidavit described a large marijuana-growing operation in a commercial or industrial warehouse, and the illegality of the activity therefore could have been inferred from these contextual facts. The affidavit, however, posited marijuana growing in a warehouse that is indistinguishable from the type of "enclosed, locked facility" that could serve as a cultivation site for a medical marijuana dispensary. § 36-2806(E). Thus, the contextual information here, like the information about marijuana odors, did not make it more probable than not that a state crime had occurred, *see Maricopa Cnty. No. J-84984*, 138 Ariz. at 284, 674 P.2d at 838, nor

did it shed any light on whether the possession of the substance was illegal.[8]

**¶32**        Although neither party discusses this point specifically in their briefs, dispensary cultivation sites are discreet locations due to the heightened risk of robbery they face.  The AMMA authorizes the department of health services to enact rules governing marijuana dispensaries.  § 36-2803(A)(4).  By law, those rules must "protect[] against diversion and theft without imposing an undue burden" on the dispensaries and must specify "[m]inimum security requirements" for dispensaries in order to protect each location. § 36-2803(A)(4)(d).   According to the rules, each dispensary and cultivation site is required to install an alarm system, video surveillance and recording system, and panic button.  Ariz. Admin. Code R9-17-318(G)(1).   Access to a dispensary cultivation site is limited to the dispensary's principal officers, board members, and authorized dispensary agents.  Ariz. Admin. Code R9-17-318(A). Dispensaries are required to adopt policies and procedures to prevent unauthorized access to their cultivation sites.  Ariz. Admin. Code R9-17-318(G)(2)(a).  And when a dispensary agent transports marijuana, he or she must "[u]se a vehicle without any medical marijuana identification."   Ariz. Admin. Code R9-17-318(D)(2). Cultivation sites, therefore, are not necessarily places that announce their presence as such.

**¶33**        The AMMA does not require dispensaries to post visible notices or otherwise alert law enforcement officers to their presence in order to receive the protections afforded by the Act.  To the contrary, the AMMA preserves the confidentiality of dispensary locations and related cultivation sites.  §§ 36-2804(B)(1)(b)(ii), 36-2810(A)(2).   Section 36-2811(E), in turn, forbids searches of dispensaries and cultivation sites except by the department of health

---

[8] Although the dissent emphasizes that the issue of dispensaries was not raised on appeal, the law concerning dispensaries was in fact utilized to justify the trial court's ruling below.  And this court must address the issue of dispensaries in order to correctly resolve the arguments the state presents on appeal.

services. It therefore follows that a police officer's discovery of an enclosed, locked facility in which marijuana is growing—which is all the record establishes here—cannot provide probable cause for a search, as this describes any lawful dispensary cultivation site that is protected from searches by the express terms of the AMMA.

¶34 Notwithstanding these confidentiality provisions, law enforcement officers may easily note factors that suggest a cultivation site or stash house is illegal and does not fall within the AMMA. For example, a site might be accessed by unauthorized individuals, *see* Ariz. Admin. Code R9-17-318(A), it might have deficient exterior lighting, *see* Ariz. Admin. Code R9-17-318(G)(1)(b), or it may be located too close to a school, § 36-2804(B)(1)(b)(ii), or in an area prohibited by local zoning. *See* § 36-2806.01. Although the dissent suggests in hindsight that such circumstances may have existed had the officers conducted further investigation,[9] no such

---

[9] The dissent observes that there was only one working dispensary in Tucson, suggesting that there may have been fewer AMMA-authorized storage facilities or growing operations in the area. The dissent also emphasizes that the warehouse here may not have had the external lighting and equipment required of an AMMA storage or growing facility. These are indeed factors a magistrate could consider, coupled with the aroma of raw marijuana, in evaluating whether officers had probable cause to search a premises. But, such information was not presented in support of the warrant request here and therefore is not relevant to our consideration of the probable-cause question before us. *See State v. Greenleaf*, 11 Ariz. App. 273, 274, 464 P.2d 344, 345 (1970). That the dissent can so quickly conjure such factors underscores how readily officers can augment their probable-cause showing beyond mere observations about aroma, and thereby honor the privacy interests of those engaged in lawful behavior. While the search warrant affidavit indicated there were residences nearby the warehouse, this in no way suggests the warehouse was located outside a commercial or industrial district, as the dissent presumes, any more than it suggests the residences themselves were improperly located in an area zoned for nonresidential uses.

factors suggesting any criminal operation were contemporaneously presented to the magistrate in the search warrant affidavit. *See State v. Greenleaf*, 11 Ariz. App. 273, 274, 464 P.2d 344, 345 (1970); *see also Beck v. Ohio*, 379 U.S. 89, 96 (1964) (search warrants are based on "objective predetermination of probable cause" instead of "far less reliable procedure o[f] an after-the-event justification for the . . . search, too likely to be subtly influenced by the familiar shortcomings of hindsight judgment").

¶35        The state emphasizes that the scent in this case was described as a "strong odor of fresh marijuana" in the affidavit, which might indicate the presence of an unlawful amount. But the AMMA authorizes marijuana dispensaries to cultivate large amounts of marijuana in off-site facilities. Moreover, the record here underscores the fallibility of such sensory impressions. Police officers initially were mistaken about the location of the marijuana based on its odor, and they consequently deployed a SWAT team to the wrong building. Nothing in the record suggests that the officers had any more expertise in estimating the amount of marijuana than its location. Thus, to the extent that the nature and strength of the aroma of unburnt marijuana could provide additional circumstantial evidence of unlawful possession beyond the mere presence of the recognizable scent, the state presented no such evidence on the record before us.

¶36        As one appellate court has observed, "[a]lthough the odor of unburnt, rather than burnt, marijuana could be more consistent with the presence of larger quantities, it does not follow that such an odor reliably predicts the presence of a criminal amount of the substance, . . . as would be necessary to constitute probable cause." *Commonwealth v. Overmyer*, 11 N.E.3d 1054, 1058 (Mass. 2014) (citations omitted). Probable cause is determined by an objective standard that should allow a judicial officer to gauge the reliability of the information reported and the inferences drawn from it. *See id.* at 1059; *see also Beck*, 379 U.S. at 96 ("[S]afeguards [are] provided by an objective predetermination of probable cause . . . ."); *Emery*, 131 Ariz. at 506, 642 P.2d at 851 (requiring that "information [be] sufficient to substantiate an independent finding of probable cause"). Accordingly, absent evidence of some

specialized and effective training that would allow an officer "reliably to discern, by odor, not only the presence and identity of a controlled substance, but also its weight" or amount, subjective characterizations of the strength of an odor do not furnish probable cause. *Overmyer*, 11 N.E.3d at 1059. And assuming arguendo that a stronger aroma of raw marijuana could reliably indicate a larger amount, the AMMA authorizes both the storage depots and growing operations that could lawfully contain comparatively large amounts of marijuana.

¶37 The dissent notes that the vast majority of AMMA cardholders now live within twenty-five miles of a medical marijuana dispensary, and the dissent concludes from this fact that the probability of an individual operating a lawful urban marijuana cultivation site is "almost nonexistent." Yet this conclusion is speculative and rests on a faulty implicit premise. It is true that a qualifying patient or designated caregiver becomes authorized to cultivate marijuana based on the proximity of the qualifying patient's home to a medical marijuana dispensary. *See* § 36-2804.02(A)(3)(f). However, the AMMA places no geographic restrictions on where an individual with authorization may cultivate marijuana. Cultivation could occur in a nonresidential area and within twenty-five miles of a dispensary site. As long as the cultivation occurs in an "enclosed, locked facility," § 36-2801(1)(a)(ii), (b)(ii), it is potentially lawful under the AMMA.

**B. Statutory Analysis**

¶38 A statutory analysis of the AMMA further supports our conclusion that the mere scent of marijuana does not supply probable cause or a substantial basis for a search. We are not persuaded by the state's arguments to the contrary, and we reject the trial court's construction of these laws.

### 1. AMMA Provisions

¶39 We interpret voter-enacted laws such as the AMMA de novo and strive to give effect to the voters' intent. *Ariz. Citizens Clean Elec. Comm'n v. Brain*, 234 Ariz. 322, ¶ 11, 322 P.3d 139, 141-42 (2014). We look first to the language of the AMMA as the best

indicator of that intent. *Dobson v. McClennen*, 236 Ariz. 203, ¶ 10, 337 P.3d 568, 572 (2014). If its terms are clear and susceptible to only one reasonable interpretation, we must apply the law as written without resorting to other methods of construction. *Id.*; *State v. Fields*, 232 Ariz. 265, ¶ 12, 304 P.3d 1088, 1092 (App. 2013). If the law is ambiguous, "[w]e consider secondary principles of statutory interpretation, such as 'the context of the statute, the language used, the subject matter, its historical background, its effects and consequences, and its spirit and purpose.'" *Brain*, 234 Ariz. 322, ¶ 11, 322 P.3d at 142, *quoting Wyatt v. Wehmueller*, 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991).

¶40 The plain language of the immunity provisions within the AMMA resolves the question of whether the odor of marijuana gives probable cause to suspect someone of a crime. Section 36-2811(B)(1) provides that "[a] registered qualifying patient or registered designated caregiver *is not subject to* arrest, prosecution or penalty in any manner, or *denial of any right or privilege*" for the use and possession of an allowable amount of marijuana under the AMMA. (Emphasis added.) The Act also states more broadly in § 36-2811(D)(2) that "[n]o person may be subject to arrest, prosecution or penalty in any manner, or *denied any right or privilege* . . . for . . . [b]eing in the presence or vicinity of the medical use of marijuana authorized under this chapter." (Emphasis added.)

¶41 The right to not be disturbed in one's private affairs under article II, § 8 is a substantial constitutional right that would be denied to AMMA patients, as well as numerous other citizens sharing homes with them, if simply being in the presence or vicinity of medical marijuana odors gave police probable cause to suspect an offense, invade homes, and make searches, seizures, or arrests. By their terms, these subsections of § 36-2811 uphold privacy rights and alter our prior search-and-seizure jurisprudence concerning marijuana.

¶42 Apparently overlooking the express provisions of subsection (D), the trial court focused exclusively on the "arrest, prosecution or penalty" clause in § 36-2811(B) to uphold the search here. That reading would require us to conclude that patients and caregivers are necessarily subject to seizure and search for their

possession of marijuana under the AMMA, notwithstanding the lawfulness of their actions. Such a conclusion cannot coexist with statutory language that expressly immunizes lawful users of medical marijuana from arrest or the denial of any privilege enjoyed by any other citizen. § 36-2811(B), (D). This broad language creates a "sweeping grant of immunity" subject only to narrow exceptions that do not apply here. *Reed-Kaliher*, 237 Ariz. 119, ¶ 8, 347 P.3d at 139.[10]

**¶43** That odor alone does not provide probable cause is evident from other provisions of the AMMA as well. The purpose of the Act is to "make a distinction between the medical and nonmedical uses of marijuana." Initiative Measure, Prop. 203, § 2(G) (2010). The Act specifies that "[m]ere possession of, or application for, a registry identification card may not constitute probable cause or reasonable suspicion, nor may it be used to support the search of the person or property of the person possessing or applying for the registry identification card." § 36-2811(H). The law generally ensures the confidentiality of cardholders' information, *see* § 36-2810, and criminalizes any unauthorized disclosure thereof. § 36-2816(D); *see also* § 36-2803(A)(4). The AMMA also anticipates that law enforcement officers will avail themselves of the web-based cardholder verification system to confirm whether individuals possess valid registry identification cards. *See* §§ 36-2801(16), 36-2807(A), (B). And even that system preserves the confidentiality of cardholders' addresses. § 36-2807(C)(1).

---

[10]The trial court's analysis also was internally inconsistent insofar as it maintained "the AMMA did not change existing case law regarding the smell of fresh marijuana or its use as probable cause," yet the court implicitly conceded that, in light of the arrest clause, the odor of the substance alone is insufficient for an arrest. *See Raymond*, 21 Ariz. App. at 119, 516 P.2d at 61 (probable cause for arrest and search generally equivalent); *see also State v. Hoskins*, 199 Ariz. 127, ¶ 30, 14 P.3d 997, 1007-08 (2000) ("A police officer has probable cause when reasonably trustworthy information and circumstance would lead a person of reasonable caution to believe that a suspect has committed an offense.").

¶44    Together, these provisions illustrate that voters intended for the law in Arizona to recognize and maintain a distinction between medical and nonmedical marijuana; they intended to preserve and protect the confidentiality and privacy rights of those authorized to use medical marijuana, much like patients using any other therapeutic drug; and the voters would not view it as reasonable for law enforcement officers or magistrates to regard everyone possessing marijuana as a criminal. *See Richcreek*, 187 Ariz. at 504, 930 P.2d at 1307 (emphasizing police officers may not use any available means to satisfy themselves about innocence of unusual activity).

¶45    Just as voters did not intend to allow searches based on the possession of registry identification cards alone, they did not wish to allow searches based on the possession or use of marijuana authorized by such cards, unless "probable cause exists on other grounds." § 36-2811(H). Indeed, it would be absurd to suggest that AMMA voters would welcome SWAT teams or other officers into the dwellings of people suffering from debilitating medical conditions such as cancer or Alzheimer's disease simply to investigate whether the use of marijuana there was medicinal. *See* § 36-2801(3); *Harris*, 234 Ariz. 343, ¶¶ 13-14, 322 P.3d at 162 (courts consider policy behind statute and evil it was designed to remedy, and seek to avoid absurd results).

¶46    The state and trial court also misconstrue certain provisions in § 36-2811 that are aimed at protecting the privacy rights of some as instead abrogating the rights of others. Subsections (E) and (F) of the statute expressly include immunities from searches among the protections given to medical marijuana dispensaries and dispensary agents engaged in lawful activity under the AMMA.[11] The trial court concluded that the absence of this

---

[11]Section 36-2811 provides:

E. A registered nonprofit medical marijuana dispensary is not subject to prosecution; search or inspection, except by the department pursuant to § 36-2806, subsection H; seizure or penalty in any

express protection in other parts of the statute means that only these commercial actors, rather than individual patients or caregivers, receive such protection. But this analysis overlooks the broad

manner and may not be denied any right or privilege, including civil penalty or disciplinary action by a court or business licensing board or entity, for acting pursuant to this chapter and department regulations to acquire, possess, cultivate, manufacture, deliver, transfer, transport, supply, sell or dispense marijuana or related supplies and educational materials to registered qualifying patients, to registered designated caregivers on behalf of registered qualifying patients or to other registered nonprofit medical marijuana dispensaries.

F. A registered nonprofit medical marijuana dispensary agent is not subject to arrest, prosecution, search, seizure or penalty in any manner and may not be denied any right or privilege, including civil penalty or disciplinary action by a court or occupational or professional licensing board or entity, for working or volunteering for a registered nonprofit medical marijuana dispensary pursuant to this chapter and department regulations to acquire, possess, cultivate, manufacture, deliver, transfer, transport, supply, sell or dispense marijuana or related supplies and educational materials to registered qualifying patients, to registered designated caregivers on behalf of registered qualifying patients or to other registered nonprofit medical marijuana dispensaries.

protections against infringement of "any right" enjoyed by an individual in subsections (B) and (D). *See Reed-Kaliher*, 237 Ariz. 119, ¶ 8, 347 P.3d at 139. And we think it implausible that voters would grant more privacy to businesses than residences, especially when homes receive heightened protection under our state constitution. *See State v. Bolt*, 142 Ariz. 260, 264-65, 689 P.2d 519, 523-24 (1984).

¶47    Instead, the voters included specific protections against searches or inspections of medical marijuana dispensaries because the AMMA in fact authorizes an administrative inspection regime for dispensaries. *See* § 36-2806(H). Voters intended this administrative inspection program, which is carried out by the department of health services rather than a law enforcement agency, *see* § 36-2801(4), to ensure adequate compliance with the AMMA, absent any evidence of law-breaking, *see* § 36-2810(E), and to supplant the provision in our general warrant statute that would otherwise allow searches and inspections "in the interest of the public health, safety or welfare." A.R.S. § 13-3912(5). Section 36-2811(F), in turn, clarifies that dispensary agents retain their rights to be free from personal searches or seizures in their workplaces, notwithstanding the aforementioned dispensary-inspection program, and despite their forfeiture of other privacy rights in the course of becoming agents, such as undergoing criminal background checks, § 36-2804.01(E), and fingerprinting, § 36-2819. In sum, the enumeration in § 36-2811(E) and (F) is an extra precaution to protect members of the commercial class from searches and uphold their privacy rights; it was not intended to diminish an individual's right of privacy by implication.

## 2. Statutory Defense

¶48    The state further contends that the lawful possession of marijuana is a statutory defense to be shown by a patient or caregiver who is accused or suspected of a crime; it is not a factor relevant to a probable-cause determination. Although similar arguments have been accepted in other states with various medical marijuana laws, *see, e.g.*, *People v. Clark*, 178 Cal. Rptr. 3d 649, 656 (Ct. App. 2014); *People v. Brown*, 825 N.W.2d 91, 94-95 (Mich. Ct. App. 2012) (per curiam); *State v. Senna*, 79 A.3d 45, ¶¶ 10-16 (Vt. 2013);

*State v. Fry*, 228 P.3d 1, ¶ 22 (Wash. 2010), we find fault with this view in two significant respects.

**¶49** First, it misunderstands the nature of the right at issue. The requirement of a search warrant exists to protect a person's privacy interests, *Hyde*, 186 Ariz. at 268, 921 P.2d at 671, and those interests receive no protection once someone's privacy has been invaded. A subsequent legal defense to a criminal conviction provides no relief from an invasion of the privacy that the Fourth Amendment protects. For that reason, as we explained above, the likelihood that a person is not guilty of any offense necessarily has a place in a probable-cause determination. *See Crocker*, 97 P.3d at 96. An ex parte warrant hearing affords no opportunity to assert a defense, prevent a search, and preserve one's constitutional right to privacy. *See* A.R.S. §§ 13-3914, 13-3915; *Frimmel*, 236 Ariz. 232, ¶ 26, 338 P.3d at 979. Accordingly, "[t]he law requires the judgment of a judicial officer," before trial or the appointment of counsel, to determine "when the right to privacy must yield to the right of search." *Hutton*, 110 Ariz. at 341-42, 519 P.2d at 40-41.

**¶50** Second, the statutory-defense argument simply proves too much. Marijuana possession is broadly criminalized, except as authorized under the AMMA, § 36-2802(E), but so too is the possession of prescription-only drugs. *See* A.R.S. §§ 13-3406(A)(1), 13-3412(B). We have long recognized that having a prescription is a defense to a drug-possession charge, *see State v. Armstrong*, 176 Ariz. 470, 475, 862 P.2d 230, 235 (App. 1993), with "[t]he burden of proving one is within a protected category" placed on the defendant. *State v. Cramer*, 174 Ariz. 522, 524, 851 P.2d 147, 149 (App. 1992).[12] Does it therefore follow that everyone taking a

---

[12] This did not change with the 2001 amendment of § 13-3406(A)(1), which added the proviso concerning valid prescriptions. 2001 Ariz. Sess. Laws, ch. 334, § 13. "A defendant 'who relies upon an exception to a criminal statute made by a proviso or distinct clause has the burden of establishing and showing that she comes within the exception.'" *State v. Bayardi*, 230 Ariz. 195, ¶ 22, 281 P.3d 1063, 1068-69 (App. 2012), *quoting In re Maricopa Cnty. Juv. Action No. JT9065297*, 181 Ariz. 69, 82, 887 P.2d 599, 612 (App. 1994); *accord State*

prescription medication is a suspected criminal who is subject to a home search and arrest? The answer is obviously no, because the bare fact of possessing a prescription drug does not cause a reasonable person to suspect a criminal offense. Questions naturally arise about the actor's status and the circumstances of the possession or use—in a word, about context—before any prudent person would form a belief about the activity being criminal. The mere fact that a prescription drug is possessed, like the fact that marijuana is possessed, is not a sufficiently strong circumstance in itself to allow a cautious person to believe someone guilty. *See Dixon*, 153 Ariz. at 153, 735 P.2d at 763.

**¶51** Although these general points render the aforementioned cases unpersuasive, specific provisions within the AMMA provide an additional reason for not applying this case law to Arizona. Notably, the AMMA contained an interim provision, A.R.S. § 36-2812, that created an "[a]ffirmative defense" for marijuana charges. Initiative Measure, Prop. 203, §§ 3, 5 (2010). That provision expired when the department of health services began issuing registry identification cards on April 14, 2011. The fact that the AMMA created an interim affirmative defense, using that precise language, strongly indicates that the permanent protections in § 36-2811, which are not designated as "defenses," are not to be treated as defenses for *all* purposes, and especially not for determining probable cause for search warrants. Rather, the AMMA "provides immunity for charges of violating § 13-3405, which would otherwise subject a person to criminal prosecution for marijuana use." *Reed-Kaliher*, 237 Ariz. 119, ¶ 16, 347 P.3d at 140.

**¶52** To broadly suggest that the lawfulness of marijuana possession is a mere defense to be asserted after arrest is the antithesis of reasonableness. Unfortunately, some states have accepted this view. The state of Washington, for example, which

---

*v. Kelly*, 210 Ariz. 460, ¶ 11, 112 P.3d 682, 685 (App. 2005); *see also Jung*, 19 Ariz. App. at 262, 506 P.2d at 653 ("[T]he state is not required to [prove] negative statutory exceptions—such exception is a matter of defense where it is not an ingredient of the offense.").

often supplies persuasive authority given our identical constitutional provisions on privacy, *see Clouse ex rel. Clouse v. State*, 199 Ariz. 196, ¶ 17, 16 P.3d 757, 761 (2001); *Bolt*, 142 Ariz. at 265 n.5, 689 P.2d at 524 n.5, has held that police officers retain discretion to arrest medical marijuana users despite proof of their compliance with medical marijuana laws. *Fry*, 228 P.3d 1, ¶¶ 17, 21-22. In our view, such unchecked police discretion undermines the rule of law and due process, with "'the risk of arbitrary and abusive practices exceed[ing] all tolerable limits.'" *State v. Mullen*, 171 Ariz. 38, 39, 827 P.2d 1133, 1134 (App. 1992) (Gerber, J., specially concurring), *quoting Brown v. Texas*, 443 U.S. 47, 52 (1979). Under Washington precedent, marijuana users can be subjected to repeated arrests and trials for perfectly lawful use of marijuana. *Fry*, 228 P.3d 1, ¶ 22. This should be recognized as the absurdity it is. *Id.* ¶ 50 (Sanders, J., dissenting). And this practice is supported, among other questionable propositions, by the false premise that police could not lawfully enforce criminal marijuana laws if the rule were otherwise, *see id.* ¶ 20—that "disorder and confusion" would be the alternative. *Clark*, 178 Cal. Rptr. 3d at 657.

**¶53**        The effect of the AMMA on law enforcement practice is not nearly so dramatic. We emphasize that our holding today is limited and that Arizona law enforcement officers retain the ability to investigate suspected marijuana crimes based on the odor of marijuana. We further emphasize that officers are not required to disprove the possibility of legal use. They simply need to provide additional contextual information that suggests the possession of marijuana is unlawful, rather than permitted by the AMMA, to establish probable cause that will authorize searches and arrests. As we indicated above, such facts may be readily obtained by traditional, effective investigatory techniques. But the privacy protections guaranteed by article II, § 8 of our state constitution, as well as the Fourth Amendment to the United States Constitution, require officials to make some effort to differentiate lawful from criminal activity. Those constitutional protections do not tolerate the guess-and-check system on display here. [13] In sum, now that

---

[13]Our holding in this case does not apply to the special context of border checkpoints, and we do not resolve whether the odor of

marijuana may be possessed legally under Arizona law, facts demonstrating nothing more than such possession cannot, standing alone, be probable cause to believe a crime has been committed.

## C. Dissent

**¶54**     Finally, the dissent maintains that we need not address the probable-cause question at all because we can hold here that the officers relied in good faith on the validity of the warrant. But, although the state plausibly argued below that the officers' reliance on the warrant was reasonable and that the good-faith exception should therefore apply, the state neither secured a ruling from the trial court on that question nor raised this argument in its answering brief. The state has therefore abandoned that argument on appeal. *See State v. Hendrix*, 165 Ariz. 580, 582, 799 P.2d 1354, 1356 (App. 1990); *see also State v. Brita*, 158 Ariz. 121, 124, 761 P.2d 1025, 1028 (1988).

**¶55**     Although our dissenting colleague is correct that we may uphold a trial court's ruling on any ground, we do not customarily do so on grounds neither raised nor briefed on appeal. *Cf. State v. Cañez*, 202 Ariz. 133, ¶ 51, 42 P.3d 564, 582 (2002) (addressing issues identified in state's brief); *State v. Boteo-Flores*, 230 Ariz. 551, ¶¶ 6-9, 288 P.3d 111, 113-14 (App. 2012) (reaching good-faith question when argument squarely raised on appeal). Moreover, it is the state's burden to establish the applicability of the good-faith exception. *Crowley*, 202 Ariz. 80, ¶ 32, 41 P.3d at 629; *see Hyde*, 186 Ariz. at 266, 921 P.2d at 669 (emphasizing state carries burden of persuasion under Rule 16.2(b), Ariz. R. Crim. P., when defendant makes prima facie case for suppression). That inquiry can include factual questions and assessments of the credibility of witnesses. Our court is ill-equipped to address such mixed

---

marijuana provides reasonable suspicion for an investigatory stop. We also emphasize that police retain the discretion to engage in consensual encounters and that marijuana smoke in public continues to provide grounds for suspecting criminal activity, as public use of marijuana remains illegal even under the AMMA. *See* § 36-2802(C)(2).

questions of law and fact when no determinations of fact have been rendered at the trial court level.

**¶56**      As appellate judges, we have a duty to be fair and impartial in rendering our decisions. *See* Rule 2.2, Ariz. Code of Jud. Conduct, Ariz. R. Sup. Ct. 81. If the state intended to argue for the good-faith exception on appeal, it was the state's duty to raise the issue in its answering brief and thereby provide Sisco the opportunity to respond in his reply brief through our normal appellate procedures. The state's abandonment of the issue may be fairly interpreted as a tactical decision aimed at generating a ruling on the state's argument that the plain-smell doctrine has not been affected by the AMMA. If our court were to now deviate from our normal appellate procedures and either give the state another opportunity to discharge its burden or relieve the state of its burden entirely by deciding the issue of good faith sua sponte, we would risk appearing asymmetrical in our treatment of the parties. As illustrated by *State v. Moreno-Medrano*, 218 Ariz. 349, ¶¶ 16-17, 185 P.3d 135, 140 (App. 2008), our court holds criminal defendants strictly responsible for discharging their appellate burdens, and it is only fitting that we hold the state to the same standard.

**Disposition**

**¶57**      Because the search warrant in this case was issued without probable cause of criminal activity or a substantial basis to conclude that probable cause existed, the trial court erred in denying Sisco's motion to suppress the evidence resulting from the search. We reverse the trial court's ruling, vacate the convictions and sentences, and remand for further proceedings consistent with this decision.

E S P I N O S A, Judge, dissenting:

**¶58**      My colleagues today fashion a new and broad incursion into the doctrine of probable cause that is neither necessary to decide this case, nor warranted by its facts. In doing so, they engage in some innovative reasoning to dispense with applicable precedent, discount persuasive guidance from other states with identical or similar medical marijuana laws, and, in my view, depart from good

precepts of wise jurisprudence. Because such judicial engineering is not necessary here, imposes an undue burden on law enforcement and public safety, and is unsupported by the record before us, I must respectfully dissent.

¶59 At the outset, it is telling that my colleagues attempt to portray their holding as "a limited one," but that is a latent mischaracterization in light of the actual facts of this case, which involve far more than the mere "scent of marijuana." In a wide-ranging discourse, the majority nevertheless repeats the phrase, "mere scent of marijuana," or some variation of it, approximately twenty-five times. That mantra, upon which much of the majority analysis relies, has no basis here. My colleagues also refer to "dwelling[s]," "residence[s]," and "large categories of innocent people"—additional factors not pertinent to the issue before us. Such a scenario might exist if this matter involved police officers strolling down a residential street and catching a whiff of burnt[14]

---

[14]My colleagues gloss over distinctions between the smell of fresh and burnt marijuana. But, setting aside the topic of dispensaries for the moment, which was not raised on appeal, the probability that any amount of growing or recently harvested marijuana would be lawful is almost nonexistent. The AMMA restricts qualified patients from cultivating any plants at all if they reside within twenty-five miles of a dispensary, A.R.S. § 36-2804.02(A)(3)(f), and limits these patients to 2.5 ounces of the dried flowers of the plant, A.R.S. § 36-2801(1)(a)(i), (15). Currently 97.2 percent of Arizonans live within twenty-five miles of an operating dispensary, with the remainder living in rural areas. *AMMA End of Year Report*, app. C (2014). Thus, while there may be "hundreds of Arizonans" who can lawfully cultivate, they cannot do so if they reside in Tucson. My colleagues, however, label this a "faulty premise" because a qualified patient with a "debilitating medical condition[] such as cancer or Alzheimer's disease" living in a remote part of the state could opt to cultivate her twelve marijuana plants in a residential area of South Tucson. That imaginative scenario appears absurd and certainly not relevant to police and judicial officers in the context of probable cause. But even if she did, common sense dictates twelve plants would not produce the

marijuana emanating from a home. But that is simply not this case. Thus my colleagues' foreboding suggestions that police could "invade homes" of "numerous . . . citizens" based on "simply being in the presence or vicinity of medical marijuana odors," and "SWAT teams . . . [entering] the dwellings of people suffering from debilitating medical conditions such as cancer or Alzheimer's disease," only serve to raise alarmist fears not relevant here.[15]

¶60        What should instead be undertaken is a straightforward application of existing law to straightforward facts. Tucson police were called by a South Tucson patrol officer after he smelled a "strong odor" of "fresh marijuana" that appeared to be emanating from a row of four storage units in South Tucson. The smell was "overpowering," even inside a vehicle on the street more than sixty or seventy feet away. There was no indication that the buildings were anything other than commercial storage units. My colleagues, however, construe this as a situation that "fits any number" of other scenarios in which individuals are not engaged in criminal activity. Indeed, they characterize maintaining a large warehouse full of marijuana plants and baled marijuana as an "entirely ordinary activity." The majority also effectively insists that the officers who sought the search warrant were required to disprove a negative before the warrant could properly issue: that the premises and property owner, who could not be located at the time, did not fall under the protection of the AMMA. My colleagues unrealistically

---

"overpowering" odor of 357 plants and fifty-three pounds of cultivated marijuana.

        [15]In fact, such situations are nearly inconceivable given the strictures of the AMMA. As already noted, nearly all qualified patients and caregivers are limited to 2.5 ounces of dried marijuana flowers. It is highly implausible that the odor of such a relatively tiny quantity of marijuana would be detectable in the street by passing officers. Indeed, Sisco's expert on "the senses of taste and smell" testified that the "marijuana-like smell" is produced by mature, budding plants, and opined that you could have a lot of plants "in a pretty tight building" and "not have much odor on the outside" depending on the plants' budding stages.

suggest this would be an easy task,[16] while ignoring that there should first be some reason to do so, other than an exceedingly slim chance that the compelling scenario faced here would be so protected. But proof of such a negative is not a requirement for probable cause. *See Gates*, 462 U.S. at 238 (only "fair probability" of criminal activity required); *cf. Evans*, 237 Ariz. 231, ¶ 13, 349 P.3d at 209 (reasonableness standard does not demand officers rule out possible alternative, innocent explanations for actions observed before effecting investigative stop).

¶61 My colleagues, while paying lip-service to the concept, lose sight of the fact that probable cause is a fluid and practical concept, and a magistrate's finding of such will be upheld when it has a substantial basis. *See Hyde*, 186 Ariz. at 272, 921 P.2d at 675. "When assessing whether probable cause exists, 'we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Dixon*, 153 Ariz. at 153, 735 P.2d at 763, *quoting Brinegar*, 338 U.S. at 175. Probable cause is determined from the totality of the circumstances, and the information upon which it is based may be "viewed in light of the police officers' knowledge and past experience." *Million*, 120 Ariz. at 15, 583 P.2d at 902.

---

[16]As the state noted at oral argument, and not denied by the majority, law enforcement officers are generally unable to access information about registered cardholders. *See* § 36-2810(A)(3). My colleagues assert that "police can easily develop facts about places where marijuana is being grown or stored that suggest the activity there is criminal, whether from their own observations, consensual encounters, or information supplied by informants." But the trial court accurately observed that in the case of "stash houses," marijuana may be moved quickly, for example, "within two hours." Furthermore, the AMMA requires that qualified patients and caregivers carry identification cards which they must produce "to enjoy a presumption of legal use." The Act does not express or imply any intent to impose greater burdens on officers investigating marijuana-related crimes and thereby diminish public safety.

¶62        The majority goes on to propose, and indeed would require, an "odor-plus" standard, while ignoring that that is precisely what the issuing judge here was presented with. The surrounding circumstances are all-important and should not be brushed aside, yet it is not until page fifteen of a twenty-nine page decision that my colleagues acknowledge the "contextual facts," albeit discounting them out of hand. But it is not a "mere scent" situation when officers are confronted by an "overpowering odor" of "fresh marijuana," emanating from commercial storage units and detectable even inside a vehicle on the street, some sixty to seventy feet away.

¶63        To rationalize reversal of the trial court's decision, my colleagues, after implicitly conceding that residential concerns do not actually apply, go beyond the factual record and arguments of the parties on appeal to posit that the storage facility here conceivably could have been an authorized marijuana dispensary. But that is a highly unlikely scenario not raised by Sisco or the state before this court, and no such evidence was introduced below.[17] Notwithstanding, after acknowledging that registered dispensary locations are confidential, the majority suggests that police might nevertheless identify an illegal cultivation site by signs of noncompliance with regulatory requirements, such as a lack of restricted access, lack of video surveillance and alarm systems, lack of exterior lighting, or violation of zoning requirements. But that was exactly the situation the officers encountered here. Indeed, the search warrant affidavit noted nearby residences, whereas

_____

[17]My colleagues acknowledge this issue was not raised on appeal but assert "the law concerning dispensaries" was "utilized to justify the trial court's ruling below." The record reflects, however, that neither party cited any cases, statutes, or regulations on this topic, nor was any evidence adduced at the hearing that the storage unit exhibited any signs of being an authorized dispensary. The court merely opined that had the warehouse been a dispensary, "that would absolutely be a defense to the crime, and, presumably, the County Attorney's office wouldn't have even issued [the] case."

cultivation sites must be in commercial or industrial districts,[18] and testimony at the hearing indicated that the building had none of the external hallmarks of a regulated cultivation site, that is, restricted access and sufficient exterior lighting, and the officers made no mention of video surveillance cameras on the building, as would be the case for an authorized cultivation site. It is notable that as of December 2012, there was only one operating dispensary in Tucson,[19] and that the storage facility here was located in a known high crime area, as pointed out by co-defense counsel at the hearing. Given this context, it is difficult to imagine that the trial court nevertheless abused its discretion in concluding that the overpowering odor of fresh marijuana, detected sixty to seventy feet away from several commercial storage units that did not exhibit any indicia of a dispensary cultivation site, indicated "a fair probability" of criminal activity. *See Gates*, 462 U.S. at 238.

**¶64** My colleagues complain, however, that the lack of external factors that might indicate an authorized storage or cultivation site was not reported to the issuing magistrate. But law enforcement officers cannot be expected to be "legal technicians," *Dixon*, 153 Ariz. at 153, 735 P.2d at 763, versed in the detailed regulatory requirements for authorized dispensaries, particularly in early 2013 when there was only one such facility in the entire city. More importantly, there was no reason for the officers to report what they did not see; to hold otherwise is to require police to imagine and negate every possibility of innocent conduct, something

---

[18] *See* City of Tucson Fact Sheet, Medical Marijuana Dispensaries and Cultivation Locations, *available at* http://www.tucsonaz.gov/files/pdsd/forms/Medical_Marijuana_Fact_Sheet.pdf. Puzzlingly, the majority disagrees that the presence of nearby homes suggests an illegal location for a marijuana storage facility, positing that it is just as likely the homes were illegally sited. This well illustrates merely another example of rationalizing away, with far-fetched scenarios, salient contextual factors the magistrate could properly consider in assessing probable cause.

[19] *See* Will Humble, *Dispensary Zoning Case*, Ariz. Dep't of Health Servs. Dir.'s Blog (Dec. 13, 2012), http://directorsblog.health.azdhs.gov.

that has never been required in assessing probable cause. *See Crowley*, 202 Ariz. 80, ¶ 26, 41 P.3d at 627 ("probable cause to issue [search] warrant not negated by fact there may be innocent explanation consistent with facts alleged in warrant request"), *citing United States v. Burke*, 718 F. Supp. 1130, 1136 (S.D.N.Y. 1989); *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1024 (9th Cir. 2009) (under totality-of-circumstances test, while police may not disregard facts tending to dissipate probable cause, "'law enforcement officers do not have to rule out the possibility of innocent behavior.'"), *quoting United States v. Thomas*, 863 F.2d 622, 627 (9th Cir. 1988). Finally, even viewing this as a close question, our supreme court has instructed that such "should be resolved by giving preference to the validity of warrants." *Hyde*, 186 Ariz. at 272, 921 P.2d at 675.

¶65 My colleagues also rely on Arizona's relatively new medical marijuana act, but readily dispense with relevant precedent from states with marijuana laws similar to Arizona's. Unlike the three states, Alaska, Massachusetts, and Oregon, whose caselaw the majority cites with approval, in Arizona, the use and possession of marijuana remains a crime. *See* §§ 13-3405, 36-2802(E); *Reed-Kaliher*, 237 Ariz. 119, ¶ 7, 347 P.3d at 139. And, under the AMMA, even qualified patients and caregivers are subject to prosecution under § 13-3405, if they possess more than the permitted amount of marijuana. *See* A.R.S. § 36-2811(A) (presumption of medical use if amount of marijuana possessed does not exceed that allowable under Act). This court has stated, in the analogous context of a grand jury probable cause proceeding, that: "In claiming protection under th[e] statutory immunity [of the AMMA], it is a defendant's burden to 'plead and prove,' by a preponderance of the evidence, that his or her actions fall within the range of immune action." *Fields*, 232 Ariz. 265, ¶ 15, 304 P.3d at 1092 (evaluating grand jury instructions in light of AMMA), *quoting Fid. Sec. Life Ins. Co. v. Ariz. Dep't of Ins.*, 191 Ariz. 222, ¶ 9, 954 P.2d 580, 583 (1998).

¶66 Arizona is far more similar to states that maintain criminal prohibitions against marijuana but allow for registration and exemption from prosecution pursuant to a narrowly tailored medical marijuana act. *See Brown*, 825 N.W.2d at 94 (Michigan's medical marijuana act "does not abrogate state criminal prohibitions

related to marijuana," it rather "constitutes a 'very limited, highly restricted exception to the statutory proscription against the manufacture and use of marijuana.'"), *quoting People v. King*, 804 N.W.2d 911, 915 (Mich. Ct. App. 2011); *Senna*, 79 A.3d at 49 ("Vermont's 'medical marijuana' law does not purport to decriminalize the possession of marijuana; it merely exempts from prosecution a small number of individuals who comply with rigid requirements for possession or cultivation. In that sense, the law creates a defense to prosecution.") (citation omitted); *see also State v. Ellis*, 327 P.3d 1247, 1250 (Wash. Ct. App. 2014) (Washington's medical marijuana act "created a potential medical use exception to . . . general rule criminalizing marijuana manufacturing").

¶67        In such states, courts have concluded that probable cause does not require officers to provide facts showing the state's medical marijuana exception to be inapplicable. *See Brown*, 825 N.W.2d at 95 (because possession and manufacture of marijuana remains illegal under Michigan law, "to establish probable cause, a search-warrant affidavit need not provide facts from which a magistrate could conclude that a suspect's marijuana-related activities are specifically not legal under the MMMA"); *see also Ellis*, 327 P.3d at 1250 ("medical use affirmative defense did not vitiate probable cause supporting a search warrant"; "affidavit need not . . . show [medical marijuana act] exception's inapplicability"); *c.f. Clark*, 178 Cal. Rptr. 3d at 656 (California's medical marijuana act provides a defense to prosecution and therefore "cannot be interpreted to impose an affirmative duty on law enforcement officers to investigate a suspect's status as a qualified patient or primary caregiver under the Act prior to seeking a search warrant.").

¶68        Thus, because marijuana remains illegal in Arizona and the AMMA provides only a narrow exception to arrest and prosecution,[20] I disagree with my colleagues that the Act has altered

---

[20] My colleagues analogize to prescription-only drugs and imply that to find probable cause here would mean "everyone taking a prescription medication [would be] a suspected criminal who is subject to a home search and arrest[.]" But that Orwellian scenario has no traction under the facts at hand. A true analogy

the nature of evidence required to support issuance of a search warrant. More importantly, this case does not present a situation in which we need reach any conclusion about the AMMA and probable-cause requirements, as the majority's own "odor-plus" test is well satisfied on the facts before us.

¶69 Finally, even assuming arguendo that the warrant here somehow fell short of establishing probable cause, the good-faith exception to the exclusionary rule would unquestionably apply. My colleagues avoid this principle on the ground the state "abandoned that argument" by not raising it on appeal,[21] and "we would risk appearing asymmetrical in our treatment of the parties." But at oral argument, the state urged that this court had an obligation to address the good-faith doctrine, citing applicable caselaw. And, contrary to the majority's implication that the state thereby sought some tactical advantage, it explained it had not advanced the issue

---

would require similar "circumstances of the possession," i.e., a storage unit filled with enough prescription drugs to be detectable by a powerful odor in the street. If, for example, fifty-three pounds and the equivalent of 357 plants (the amount of marijuana found here) of Oxycontin produced a distinctive, "overpowering" odor flowing from a nondescript storage unit in South Tucson, and given the well-known abuse and black market for such drugs, the same probable cause for a search would arise as here.

[21]The good-faith exception was clearly raised below by the state in its response to Sisco's motion to suppress, and both sides were aware of the argument when developing the record. After taking evidence and hearing the state's fully cross-examined witnesses, the trial court did not reach the good-faith argument because it upheld the issuing judge's finding of probable cause. Thus, there was no reason for the state "to secure a ruling" on this issue. My colleagues nevertheless decline to reach it because Sisco has not had "the opportunity to respond." But he in fact had every opportunity to do so below, as well as before this court after the topic was broached during the state's argument; there is no reason to now skirt the issue when the record is well developed and sufficient.

in its answering brief only because it had believed the search warrant at issue was "solid."

**¶70**         Most importantly, what the majority casts as unfair asymmetry is the well-established rule that the trial court's decision should be upheld on any valid legal ground supported by the record.  *See Cañez*, 202 Ariz. 133, ¶ 51, 42 P.3d at 582 (although certain issues deemed abandoned by state for lack of authority or argument, "we are obliged to uphold the trial court's ruling if legally correct for *any reason*") (emphasis added); *Boteo-Flores*, 230 Ariz. 551, ¶ 8, 288 P.3d at 113 (appellate court "required" to affirm trial court's ruling for any legally correct reason); *State v. Kinney*, 225 Ariz. 550, n.2, 241 P.3d 914, 918 n.2 (App. 2010) (court of appeals will address waived issue when upholding trial court's ruling).  It is notable that my colleagues decline to apply this principle, while citing facts outside the record and arguments not briefed on appeal to reverse the trial court.  *Cf. Boteo-Flores*, 230 Ariz. 551, ¶ 9, 288 P.3d at 113-14 (while appropriate for appellate court to consider waived argument when presented to uphold trial court's ruling, not so when argument attacks ruling).  My colleagues justify their position by asserting "we do not customarily [uphold trial courts] on grounds neither raised nor briefed on appeal."  But, as borne out by our precedents, that is exactly what justice requires when the law and the facts clearly support a court's ruling, as is the case here.  *See Cañez*, 202 Ariz. 133, ¶ 51, 42 P.3d at 582; *State v. Lopez*, 217 Ariz. 433, n.4, 175 P.3d 682, 687 n.4 (App. 2008) (addressing argument waived for being raised only in reply brief); *Mitchell v. Gamble*, 207 Ariz. 364, ¶ 16, 86 P.3d 944, 950 (App. 2004) (considering argument raised for first time at oral argument); *Barlage v. Valentine*, 210 Ariz. 270, n.7, 110 P.3d 371, 377 n.7 (App. 2005) (same); *see also Decola v. Freyer*, 198 Ariz. 28, ¶ 8, 6 P.3d 333, 336 (App. 2000) ("where the parties have failed to address completely the correct rule of law governing the issues, we are not precluded from doing so").

**¶71**         The exclusionary rule is triggered when police misconduct is "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."  *Herring v. United States*, 555 U.S. 135, 144 (2009); *see also Hudson v. Michigan*, 547 U.S.

586, 591 (2006) (suppression of evidence remedy of "last resort" because of "'substantial social costs'"), *quoting United States v. Leon*, 468 U.S. 897, 907 (1984). Under the good-faith exception, the exclusionary rule does not bar evidence seized in reasonable, good-faith reliance on a search warrant that is later found defective for lack of probable cause. *See Leon*, 468 U.S. at 920-21. To qualify for the exception, the officers' reliance on the warrant must be "objectively reasonable." *Id*. at 922; *see also* A.R.S. § 13–3925(C) (codifying good-faith exception). Determining whether that standard is met turns on "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23. As a result, the exclusionary rule "remains an appropriate remedy if": (1) a warrant is issued based on a deliberately or recklessly false affidavit; (2) a judicial officer fails to act in a neutral manner in issuing a warrant; (3) a warrant is based on an affidavit "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'"; or (4) a warrant is so facially deficient that no officer could believe it to be valid. *See id*. at 922–23, *quoting Brown v. Illinois*, 422 U.S. 590, 610-11 (1975).

**¶72**        When questioned about the good-faith exception at oral argument before this court, Sisco did not contend there was evidence the judge issuing the warrant was misled by false information, [22] that she abandoned her judicial role, or that the

_____

[22]Sisco has not asserted that either warrant was issued on the basis of false or reckless statements. He did, in a different context, claim the officers "recklessly with[e]ld[] information about wind conditions when calling for the first warrant." But that allegation, if relevant at all, only went to identifying which unit was the likely source of the marijuana. And our supreme court has "decline[d] to interpret the first *Leon* exception to include an affirmative duty for police officers to volunteer information that a magistrate does not request." *Hyde*, 186 Ariz. at 274, 921 P.2d at 677 (good-faith exception not affected by claim detective was "not candid" for failing to volunteer information to commissioner, "even if she did not inquire," because no evidence detective provided false information).

warrant was "so facially deficient . . . that the executing officers [could not] reasonably presume it to be valid." *Id.* at 923. Rather, he asserted the affidavit lacked any indicia of probable cause. The threshold for establishing this contention "is a high one." *Messerschmidt v. Millender*, ___ U.S. ___, ___, 132 S. Ct. 1235, 1245 (2012). Officers are not required to make a "deep inquiry" into the reasonableness of a warrant, and "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination." *Leon*, 468 U.S. at 921–22, *quoting Gates*, 462 U.S. at 267; *see also Malley v. Briggs*, 475 U.S. 335, 346 n.9 (1986) (sound presumption magistrate more qualified than police officer to make probable cause determination, "and it goes without saying that where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable").

¶73 Here, it was not unreasonable for the officers to rely upon a search warrant based on the "overpowering" smell of "fresh" marijuana detectable at a significant distance from a commercial storage unit. Notably, both before and after the issuance of the warrant in this case, this court has held that the odor of marijuana provides probable cause for a search. *See State v. Decker*, 119 Ariz. 195, 197, 580 P.2d 333, 335 (1978) (odor of burned marijuana afforded probable cause to believe hotel room contained marijuana); *Baggett*, 232 Ariz. 424, ¶ 20, 306 P.3d at 85 (when officers smelled marijuana they had probable cause to believe backpack contained contraband and "had a lawful right to search"). Here, there was more than mere scent alone, meeting the "odor-plus" standard referred to by my colleagues. And that the duly issued warrant did not include a litany of facts disproving the unlikely possibility the storage unit was a registered medical marijuana dispensary or cultivation site did not make the officers' reliance upon the warrant "'entirely unreasonable,'" *Leon*, 468 U.S. at 901, 923, *quoting Brown*, 422 U.S. at 610-11, requiring the remedy of "last resort," *Hudson*, 547 U.S. at 591. Thus, the good-faith execution of the warrant obviates the necessity of deciding this case on other, broader grounds and reversing the trial court by way of new, unprecedented interpretations of the AMMA and Fourth

Amendment requirements. [23]  *See Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them"); *cf. Mountain States Tel. & Tel. Co. v. Ariz. Corp. Comm'n*, 160 Ariz. 350, 354, 773 P.2d 455, 459 (1989) ("jurisprudential considerations require us to decide the case on the narrowest grounds possible").

¶74        In sum, because under the facts and circumstances of this case any reasonable person would conclude there was a "fair probability that contraband or evidence of a crime w[ould] be found" in the storage unit, *Gates*, 462 U.S. at 238, and because the investigating officers executed the search in good-faith reliance on a neutral magistrate's warrant, *see Leon*, 468 U.S. at 920, it is unnecessary to interpret Arizona's Medical Marijuana Act, apply out-of-state precedents from jurisdictions in which marijuana has been decriminalized, and burden law enforcement and public safety with a broad new probable cause requirement not invoked by the

---

[23] Given the uncontested facts, it is unclear what "factual questions" and "credibility" determinations the majority believes would need to be resolved, but if that were actually the case, we should remand to allow the trial court to make such findings and decide the question of good faith. *See State v. Caraveo*, 222 Ariz. 228, ¶¶ 8, 23, 213 P.3d 377, 379, 382 (App. 2009) (remanding for determination whether search permissible based on different legal argument made below but not addressed by trial court); *State v. Branham*, 191 Ariz. 94, 98, 952 P.2d 332, 336 (App. 1997) (remanding for reconsideration where "trial court's basis for denying the motion to suppress was incorrect" and it had not ruled on question whether consent justified search). "Remand . . . is proper when the trial court is found to have based its ruling on an improper standard." *State v. Herrera*, 232 Ariz. 536, ¶¶ 13-14, 307 P.3d 103, 110 (App. 2013) (limited remand appropriate to permit trial court to consider evidentiary issue and allow this court to determine on review whether ruling was legally correct), *citing Boteo–Flores*, 230 Ariz. 551, ¶ 7, 288 P.3d at 113.

situation they faced here. Accordingly, I respectfully dissent and would affirm the trial court's denial of the motion to suppress.