IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

BRET R. FRIMMEL, *Petitioner,*

*v.*

THE HONORABLE TERESA A. SANDERS, Judge of the SUPERIOR
COURT OF THE STATE OF ARIZONA, in and for the County of
MARICOPA, *Respondent Judge.*

STATE OF ARIZONA, *Real Party in Interest.*

No. 1 CA-SA 14-0166

FILED 11-25-2014

Petition for Special Action from the Superior Court in Maricopa County
No.  CV2014-103633-001
The Honorable Teresa A. Sanders, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED**

COUNSEL

Steptoe & Johnson LLP, Phoenix
By Paul K. Charlton, Quintin H. Cushner
*Co-Counsel for Petitioner*

Polsinelli PC, Phoenix
By Leon B. Silver
*Co-Counsel for Petitioner*

Maricopa County Attorney's Office, Phoenix
By Arthur Hazelton
*Counsel for Real Party in Interest*

## OPINION

Judge Kenton D. Jones delivered the opinion of the Court, in which Presiding Judge Peter B. Swann and Judge Michael J. Brown joined.

**J O N E S**, Judge:

**¶1**		Defendant Bret Frimmel petitions for special action review of the trial court's denial of his request for an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), and *State v. Buccini*, 167 Ariz. 550, 810 P.2d 178 (1991), to determine the validity of five search warrants. Because we find that Frimmel has made a substantial showing that the warrants were issued based upon supporting affidavits that the affiants knew or should have known contained recklessly false statements or omissions of relevant and known facts, we accept special action jurisdiction and remand to the trial court with directions to conduct a *Franks* hearing.

## FACTS[1] AND PROCEDURAL HISTORY

**¶2**		Frimmel is the owner of Uncle Sam's, a restaurant chain with multiple locations in Arizona. The Maricopa County Sheriff's Office (MCSO) received information from two informants suggesting Uncle Sam's illegally hired undocumented persons to work at its restaurants. In July 2013, following a year-long investigation, MCSO obtained three search warrants, supported by three virtually identical affidavits, to search Uncle Sam's Phoenix and Peoria locations and Frimmel's home. During the execution of the search warrants, ten employees were arrested, four of whom were ultimately convicted of identity theft.

**¶3**		In January 2014, upon completion of the investigation, Frimmel was arrested and charged with multiple felony offenses related to knowingly hiring and employing individuals with false identification. That

---

[1] The State's response to Frimmel's special action petition argues only that this Court should decline special action jurisdiction, and does not refute or even address Frimmel's factual allegations. Therefore, for the purposes of our evaluation of the need for a *Franks* hearing, we accept the factual allegations of the petition as true. By employing this standard of review, we do not bind the trial court to any findings following its evaluation of the evidence.

same day, MCSO obtained two additional warrants, based upon two additional affidavits, to search the cell phones of Frimmel and an Uncle Sam's manager.

¶4        Before trial, Frimmel moved to suppress the evidence obtained during the execution of the five warrants, arguing there was insufficient probable cause to support the issuance of the warrants because the underlying affidavits contained numerous false statements and omitted known, relevant information.  He sought a *Franks* hearing to confront and cross-examine the affiants.  To support his request, Frimmel detailed each statement in the affidavits he believed to be false or incomplete, and identified the portions of public records and MCSO's own reports that contained contradictory and relevant omitted information.  The following paragraphs recount   misrepresentations contained within, or material omissions from, the affidavits supporting the warrants, as demonstrated by the documentation provided by Frimmel on review and, previously, to the trial court.

## I.        Credibility of Informants

¶5        The affidavits do not reveal that the two initial informants were married.  The affidavits state that the husband worked "mostly" at Uncle Sam's Scottsdale location, and left when that location closed in August 2012.  To the contrary, Frimmel states the husband worked exclusively at the Scottsdale location until terminated from his employment in June 2012.  The husband was subsequently convicted of felony theft for embezzling funds from Uncle Sam's, a fact also omitted from the underlying affidavit.  Moreover, MCSO possessed Arizona Department of Economic Security (ADES) records, identified and referenced within the search warrant affidavits, confirming neither informant had worked for Uncle Sam's since the third quarter of 2012, at the latest.

¶6        Frimmel also identifies information tending to undermine the wife's credibility.  First, Frimmel notes the wife made the initial call to authorities regarding Uncle Sam's hiring practices on the same day her husband was arrested for the above-referenced embezzlement. Second, the wife's conviction for possession of drug paraphernalia was not disclosed. Third, according to Frimmel, the wife voluntarily quit her position with Uncle Sam's in January 2011 after being admonished for poor work performance, and documentation provided indicates she lost her claim against Uncle Sam's for unemployment benefits.  Finally, Frimmel states the wife worked only as a server at one location, and therefore possessed

limited knowledge, if any, of the alleged illegal hiring practices for cooks and dishwashers. This information was not contained in the affidavits.

¶7        Frimmel further alleges the affidavits did not fully disclose the circumstances surrounding the four convicted former Uncle Sam's employees who participated in a "free talk" with MCSO about Frimmel's alleged criminal activity. The affidavits state the four ex-employees were "convicted of identity theft and forgery charges." However, Frimmel provided public documents indicating each was convicted of a single class six felony for taking the identity of another, and was provided significant benefit in exchange for his cooperation with law enforcement — namely, release on his own recognizance and the deferral of action related to his immigration status, which allowed each to be lawfully present and employed in the United States during the period of deferral.

## II.        Lack of Information Linking the Phoenix Location or Frimmel's Residence to Illegal Activity

¶8        Frimmel notes the affidavits did not disclose that neither the husband nor the wife had any personal knowledge regarding Frimmel's home or Uncle Sam's Phoenix location. Frimmel states the informants never worked at the Phoenix location. And although the husband claimed, more than six months after his employment was terminated, that Frimmel said he kept business records in his home, the husband admitted he did not know which home Frimmel was referencing, and the residence that was ultimately searched was not owned by Frimmel during the husband's period of employment. Moreover, the affidavits omitted that surveillance of Frimmel's residence did not reveal any evidence suggesting it was used as a business office or place to maintain business records.

¶9        The affidavits also stated that vehicles belonging to employees suspected of working illegally were observed in the parking lot of two restaurant locations and Frimmel's personal residence. However, MCSO's own records reflect that no employee vehicles were ever observed at Frimmel's residence, and that it did not conduct any surveillance at the Peoria location.

¶10        Further, although the affidavits asserted that the Maricopa County Assessor's Office listed a business address for "Uncle Sam's" at Frimmel's home, public records reflect Frimmel's property as a residence, and do not contain any address information related to Uncle Sam's. Additionally, the ADES records, in MCSO's possession, do not establish

any link to the residential address, but instead list the Peoria location as Uncle Sam's business address.

### III. Stale Information

**¶11** The affidavits stated the information obtained from the husband and wife was current as of February 2013. Based upon the facts submitted by Frimmel, the husband's personal knowledge of Uncle Sam's operations ended upon his termination in June 2012, and the wife's ended upon her resignation in January 2011.

**¶12** With regard to the cell phone warrants, the affidavits contain no facts establishing probable cause that Frimmel used the cell phone "on or about the 1st day of October, 2013," when the affidavit alleges criminal activity occurred. Frimmel contends no evidence exists within the reports detailing MCSO's investigation to suggest Frimmel engaged in any criminal conduct after July 17, 2013, more than six months prior to the issuance of these warrants.

**¶13** Frimmel further argues there was no evidence indicating cell phones or telephones were ever used to facilitate the criminal activity alleged.

### IV. Evidence Regarding Hiring Practices

**¶14** The affidavit stated the husband "was positive no employees had to fill out the A-4 state tax form." Yet, the MCSO report specifically states the informant was "not positive" if employees were required to fill out this form. The husband was further quoted as saying Frimmel "never makes photocopies of identifications presented by employees," when photocopying employee identification is irrelevant as it is not required by law.

**¶15** Additionally, Frimmel identifies statements made by the four convicted ex-employees to MCSO that contradict the affdiavits; these omitted statements indicate Frimmel followed lawful hiring procedures by requiring Social Security cards and photo identifications, and instructed his manager to watch employees fill out applications. According to Frimmel, each ex-employee also stated Frimmel was not involved in the hiring process, and three specifically stated they acted on their own to obtain the forged identification used to gain employment. This information was omitted from the warrant applications.

## V.     Suggestion of Unrelated Criminal Drug Activity

¶16          It is undisputed there has never been any allegation regarding drug use or trafficking in this case.   However, the affidavit suggested otherwise by including the following paragraph:

> It is also my experience that people who deal in quantities of illegal drugs have to communicate to successful [sic] control, operate, and facilitate an illegal drug trafficking organization. Telephones, pagers, and cellular telephones are some of the common forms of electronic communications used by drug trafficking organizations. They communicate by voice, text, video, instant messenger push to talk "Walkie-Talkie style" communication and photographs to avoid police detection.

## VI.     Other Circumstances Surrounding Collection of Information

¶17          The affidavit states that MCSO received an anonymous tip in October 2012 regarding the Uncle Sam's Scottsdale location.  According to the MCSO report provided by Frimmel, the only tip it received related to the Peoria location.

¶18          The magistrate was not advised that the affidavits were based, at least in part, upon information obtained by a deceased MCSO officer found in possession of illegal drugs, MCSO evidence bags, and hundreds of stolen driver's licenses, identifications, license plates, passports, airport security clearance cards and wallets.

¶19          The affidavit used to support the search of Frimmel's cell phone states that an unidentified database connected Frimmel to the phone number, and that a voicemail message identified Frimmel by name. Frimmel again points to MCSO's investigation reports in noting the affidavit omits MCSO actually recovered the phone during Frimmel's arrest, and obtained the phone number through a warrantless extraction of information the next day.

¶20          Frimmel identifies inconsistencies regarding even seemingly insignificant facts in the case, noting the cell phone affidavits state the original search warrants were executed on July 7, 2013 — ten days earlier than they were actually executed — and that Frimmel's manager was actually an owner of Uncle Sam's.

¶21          The remaining information supporting the warrants authorizing the search of Uncle Sam's Phoenix and Peoria locations and

Frimmel's personal residence consisted of MCSO's discovery of a large number of "discrepancies" regarding the Social Security numbers Uncle Sam's employees provided to ADES. These discrepancies included Social Security numbers associated with more than one name, more than one address, only an out-of-state address, or for which there was no record. No additional information was provided to support the cell phone warrants.

## JURISDICTION

**¶22** This Court has discretion to accept special action jurisdiction, *Potter v. Vanderpool ex rel. Cnty. of Pinal*, 225 Ariz. 495, 498, ¶ 6, 240 P.3d 1257, 1260 (App. 2010), and will generally do so only in cases that raise issues of statewide importance, issues of first impression, pure legal questions, or issues that are likely to arise again. *Luis A. v. Bayham-Lesselyong ex rel. Cnty. of Maricopa*, 197 Ariz. 451, 452-53, ¶ 2, 4 P.3d 994, 995-96 (App. 2000) (citing *Andrade v. Superior Court*, 183 Ariz. 113, 115, 901 P.2d 461, 463 (App. 1995)). Special action jurisdiction may also be appropriate where there is "no plain, adequate or speedy remedy by appeal, and justice cannot be obtained by other means." *Id.* (citing *Nataros v. Superior Court*, 113 Ariz. 498, 499, 557 P.2d 1055, 1056 (1976)).

**¶23** Magistrates are asked to issue search warrants based upon the integrity of their supporting affidavits, and in the course of those efforts, must rely upon affiants to provide truthful, accurate, and complete information to substantiate the existence of probable cause. An important purpose of the defendant's right to challenge the sufficiency of probable cause, through a *Franks* hearing, is "to mitigate the dangers of the *ex parte* procedure used to obtain a search warrant, and to deter over-zealous officers from supplying false information in their efforts to obtain access to the constitutionally protected privacy of [the defendant]." *Buccini*, 167 Ariz. at 558, 810 P.2d at 186 (citing *Franks*, 438 U.S. at 168-69).

**¶24** Here, Frimmel argues he was improperly denied a hearing to examine the sufficiency of probable cause supporting five separate warrants where the supporting affidavits misstated facts contained within the agency's own reports, omitted crucial information regarding the depth and breadth of informants' actual knowledge and possible biases, and overstated the evidence against the defendant concerning the alleged crimes. Although a defendant could address the denial of a *Franks* hearing on direct appeal, the latitude afforded to law enforcement when providing information, under oath, to support a magistrate's issuance of a search warrant is a matter of statewide importance. We therefore accept jurisdiction of this special action.

7

## STANDARD OF REVIEW

**¶25**     We review the denial of a request for a *Franks* hearing *de novo*. *United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000). Additionally, the legal determination of probable cause, based upon a complete and accurate search warrant affidavit, is reviewed *de novo*. *See Buccini*, 167 Ariz. at 555-56, 810 P.2d at 183-84.

## DISCUSSION

**¶26**     The Fourth Amendment to the U.S. Constitution requires a search warrant be issued only upon probable cause. U.S. Const. amend. IV; *State v. Pike*, 113 Ariz. 511, 513, 557 P.2d 1068, 1070 (1976). The existence of probable cause must be determined by a detached, disinterested magistrate after considering sworn statements. Ariz. Rev. Stat. §§ 13-3913 to -3915 (2014); *Pike*, 113 Ariz. at 513, 557 P.2d at 1070. Given the potential for abuse of the *ex parte* procedure by which warrants are issued, the defendant may challenge a search warrant based upon false or incomplete information. *Buccini*, 167 Ariz. at 558, 810 P.2d at 186 (citing *Franks*, 438 U.S. at 168-69).[2]

**¶27**     Specifically, a defendant is entitled to a hearing to challenge a search warrant affidavit when he makes a substantial preliminary showing (1) that the affiant knowingly, intentionally, or with reckless disregard for the truth included a false statement in the supporting affidavit, and (2) the false statement was necessary to the finding of probable cause. *State v. Poland*, 132 Ariz. 269, 279, 645 P.2d 784, 794 (1982) (citing *Franks*, 438 U.S. at 155-56). A *Franks* challenge is also authorized when it has been shown "a warrant affidavit valid on its face . . . contains deliberate or reckless omissions of facts that tend to mislead." *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir.), *amended on other grounds*, 769 F.2d 1410 (9th Cir. 1985). An affiant is not permitted to tell "less than the total story" to "manipulate the inferences a magistrate will draw," or "intentionally or recklessly omit[] facts required to prevent technically true statements in the affidavit from being misleading." *Id.* "To allow a magistrate to be misled in such a

---

[2] We acknowledge and agree that "the fact that an informant has given false information to a police affiant will not serve to vitiate the existence of probable cause," absent a showing that the affiant knew or should have known of the misrepresentation or omission. *Pike*, 113 Ariz. at 513, 557 P.2d at 1070. We focus this Opinion, instead, upon specific statements and omissions the record reflects the affiant knew or had reason to know were false and/or material by virtue of contradictory evidence contained within law enforcement's own reports and public records.

manner could denude the probable cause requirement of all real meaning." *Id.* (citing *Franks*, 438 U.S. at 168).

¶28 If the defendant then proves, at an evidentiary hearing, perjury or reckless disregard for the truth by a preponderance of the evidence, the false statement must be excised from the affidavit. *Poland*, 132 Ariz. at 279, 645 P.2d at 794. Unless the affidavit, purged of its falsities and supplemented by its omissions, provides a sufficient basis for probable cause, the search warrant must be voided and the evidence seized pursuant to it must be suppressed. *Id.* (citing *United States v. Young Buffalo*, 591 F.2d 506, 509 (9th Cir. 1979)); *Stanert*, 762 F.2d at 782.

¶29 Here, the trial court denied Frimmel the opportunity to explore the alleged falsehoods and omissions at an evidentiary hearing. We therefore consider whether Frimmel made the requisite "substantial preliminary showing," prescribed by *Franks*. *Poland*, 132 Ariz. at 279, 645 P.2d at 794 (citing *Franks*, 438 U.S. at 155); *see also United States v. Chesher*, 678 F.2d 1353, 1362 (9th Cir. 1982) ("Clear proof is not required [at the motion stage] — for it is at the evidentiary hearing itself that the defendant, aided by live testimony and cross-examination, must prove actual recklessness or deliberate falsity.").

## A. Deliberate Falsehood or Reckless Disregard for the Truth

¶30 Because a search warrant affidavit is presumed to be valid, a challenge to its sufficiency must be more than conclusory or speculative. *Franks*, 438 U.S. at 171. Therefore, a defendant must make specific allegations of deliberate falsehoods or reckless disregard for the truth, with reference to the relevant portion of the warrant, and support the allegations with a detailed offer of proof and statement of supporting reasons. *Id.*

¶31 A search warrant affidavit must be read in a common sense and realistic manner. *State ex rel. Collins v. Superior Court*, 129 Ariz. 156, 158, 629 P.2d 992, 994 (1981). Although an innocent or negligent mistake does not constitute a *Franks* violation, the use of out-of-date information as an expression of current status tends to support a claim of recklessness. *Chesher*, 678 F.2d at 1360-61. The Fourth Amendment requires that "facts constituting probable cause . . . be 'so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time.'" *State v. Miguel*, 209 Ariz. 338, 341, ¶ 13, 101 P.3d 214, 217 (App. 2004) (quoting *Sgro v. United States*, 287 U.S. 206, 210 (1932)). Therefore, "a[n] affidavit used to support a search warrant 'must speak as of the time of the issue of that warrant.'" *State v. Kasold*, 110 Ariz. 563, 566, 521 P.2d 995, 998 (1974)

(quoting *Srgo*, 287 U.S. at 211); *see also State v. Turney*, 134 Ariz. 238, 241, 655 P.2d 358, 361 (App. 1982) (presuming information was stale, and incapable of supporting probable cause, where there was no indication as to the dates of the alleged illegal activity).

¶32         Based upon the record before us, the affidavits were based heavily upon information from informants who had, at best, limited personal knowledge of Frimmel's hiring and record-keeping practices, and the timeliness of information they provided expired long before the warrant was sought.  The affiant did not state when he obtained the information from the informants, but alleged it was current as of February 2013 — still five months before the issuance of the warrants.  The reliance upon stale information is troubling in that more recent information within law enforcement's reports, and thereby within its possession and withheld from the magistrate, specifically contradicted the statements in the affidavits and affirmatively indicated Frimmel acted lawfully by requiring documentation of legal status prior to hiring.

¶33         Failure to disclose the history, background, and motivation of an informant may be a material omission from a search warrant affidavit. *See United States v. Elliott*, 322 F.3d 710, 716 (9th Cir. 2003) (noting "an informant's criminal past involving dishonesty is fatal to the reliability of the informant's information, and his/her testimony cannot support probable cause" absent additional evidence that bolsters the reliability of the tip or information (quoting *Reeves*, 210 F.3d at 1045)); *United States v. Hall*, 113 F.3d 157, 159 (9th Cir. 1997) (finding concession by the government that a law enforcement officer failed to disclose certain convictions of an informant while testifying to others satisfied requirement that there had been a reckless disregard of the truth).  *But see United States v. Ruiz*, 758 F.3d 1144, 1149, 1152 (9th Cir. 2014) (excusing "serious omissions" regarding an eyewitness's dishonest behavior and motive to lie where other corroborating information was available to support her statements).

¶34         Here, the affidavits provided virtually no background information on any of the informants, thereby depriving the magistrate of the opportunity to meaningfully and neutrally evaluate the veracity of the informants, much less the information they provided to MCSO.  Had the magistrate been aware the two initial informants were husband and wife who (1) were discharged many months earlier for (proven) criminal activity against Frimmel; (2) had exhibited poor work performance; and (3) possessed minimal current personal knowledge regarding Uncle Sam's hiring practices, we cannot conclude the magistrate would have found the informants or their information credible or sufficiently reliable to support

the existence of probable cause. Similarly, without any information regarding the relatively minor consequences and significant immigration benefits bestowed upon the four convicted ex-employees, the magistrate could not make an independent and informed decision regarding their credibility.

¶35　　　　While every fact in the affidavit need not be true, *Franks*, 438 U.S. at 165, law enforcement officers are not permitted to exaggerate known facts to falsely substantiate the magnitude of a crime or create probable cause where none exists. *See Stanert*, 762 F.2d at 781; *see also State v. Payne*, 25 Ariz. App. 454, 457-58, 544 P.2d 671, 674-75 (1976) (excluding evidence obtained as a result of a search warrant that falsely implied an informant personally observed heroin in the defendant's possession). To accept the "possibility that [some fact] might be true . . . would be to ignore the requirements of probable cause and truthfulness." *State v. Claxton*, 122 Ariz. 246, 248, 594 P.2d 112, 114 (App. 1979) (finding officer's statement in affidavit that defendant was in possession of merchandise was "knowingly and intentionally false" or "made with reckless disregard for the truth" where officer testified that, at best, there was "only a possibility that the jewelry was back in [defendant's] possession"). Based upon the documentation and information provided, the affiants, at a minimum, exaggerated the strength of the allegations levied against Frimmel by overstating the evidence against him and overstating the alleged existence of business activity at his home when MCSO apparently had little, if any, actual knowledge of the details of Frimmel's hiring practices. It is not within the power of an affiant, within the strictures of the Fourth Amendment, to alter an honest "maybe" to a false "yes" in order to obtain a warrant.

¶36　　　　Finally, the unexplained failure to discover and/or disclose written information prepared by and readily available to law enforcement agents through the course of their investigation tends to corroborate a defendant's charge that the affiant acted recklessly. *See Chesher*, 678 F.2d at 1360-61 (finding unpersuasive officer's claim that he was unaware of written report of law enforcement agency prepared four years prior that contradicted information contained in the search warrant affidavit). Our supreme court has noted that when "the affiant both knew the correct facts while swearing to false facts and omitted other facts that he knew, the conclusion seems inescapable" that averments were made knowingly, intentionally, or recklessly. *Buccini*, 167 Ariz. at 554 n.5, 810 P.2d at 182 n.5. Here, the affiants misstated or omitted important, material facts either contained within MCSO's own investigative reports or other obvious, available public records, and we have been provided no explanation for the

failure to review those reports to ensure the integrity of the affidavits supporting the requested warrants.

¶37 Based upon the record before us, the seemingly pervasive misstatements of basic facts and numerous misrepresentations and omissions of material facts, we conclude Frimmel made a substantial preliminary showing that false statements and material omissions were made with, at a minimum, reckless disregard for the truth.

## B. Sufficiency of Probable Cause

¶38 Having concluded Frimmel made a substantial preliminary showing that the affidavits contained recklessly false statements or omissions, we next address whether "the remaining content of the affidavit[s] is sufficient to support a finding of probable cause." *State v. Carter*, 145 Ariz. 101, 109, 700 P.2d 488, 496 (1985). In order to do so, we first redraft the affidavits to remove the falsehoods and add in material omitted facts. *Id.* In determining whether the redrafted affidavits sufficiently support a finding of probable cause, we apply the totality of the circumstances standard articulated by the U.S. Supreme Court in *Illinois v. Gates*, 462 U.S. 213 (1983). *Buccini*, 167 Ariz. at 556, 810 P.2d at 184. "An officer has probable cause to conduct a search if a reasonably prudent person, based upon the facts known by the officer, would be justified in concluding that the items sought are connected with the criminal activity and that they would be found at the place to be searched." *Id.*

¶39 If the affiants had simply provided the magistrate with only accurate and reliable information, as supported by MCSO's own report and public record, they would have reported that a number of individuals hired by Uncle Sam's in the previous year were using Social Security numbers connected to more than one name, more than one address, only an out-of-state address, or unconnected to any name or address. What is lacking in the record is credible evidence to support the alleged complicity of Frimmel; that Frimmel participated in illegal activity, let alone conspired with others to hire undocumented persons or assist them in forging credentials, appears to be left purely to conjecture based upon the records before this Court.

¶40 Probable cause cannot be established by mere suspicion that a search will reveal items connected to criminal activity. *Buccini*, 167 Ariz. at 557, 810 P.2d at 185 (citing *United States v. Kandlis*, 432 F.2d 132, 135-36 (9th Cir. 1970), and *State v. Hutton*, 110 Ariz. 339, 341, 519 P.2d 38, 40 (1974)). To the contrary:

> The point of the Fourth Amendment, which is often not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.

*Id.* (quoting *Johnson v. United States*, 333 U.S. 10, 13-14 (1948)).

¶41 Based upon the record before us, correction of the alleged false statements and addition of the omitted facts would defeat a finding of probable cause. If Frimmel proves that (1) the statements discussed above were false, (2) the omitted facts were true, and (3) the misrepresentations and omissions were made intentionally or with reckless disregard to their truth, we would conclude that the searches violated the Fourth Amendment. Frimmel has therefore satisfied both prongs of *Franks*, and is entitled to an evidentiary hearing to examine the sufficiency of probable cause supporting the five warrants at issue.

## CONCLUSION

¶42 While evidentiary hearings into an affiant's veracity shall not be obtainable upon a bare allegation of bad faith, *Franks*, 438 U.S. at 171, we do not consider the "rights secured by the constitution [] mere 'technicalities' which should be swept aside in the interests of expediency even to accomplish the most desired social goal." *Bolt*, 142 Ariz. at 267, 689 P.2d at 526. Here, Frimmel has made a substantial preliminary showing of numerous false statements, misrepresentations and/or material omissions contained within the affidavits submitted in support of the warrants that could have affected the magistrate's evaluation of probable cause. We hold that "[w]here there is significant doubt about the propriety of police practice and its impact on an important credibility determination supporting a probable cause conclusion, we should exercise caution on the side of the Fourth Amendment and improved police practices . . . ." *Ruiz*, 758 F.3d at 1153 (Gould, J., dissenting). On the record before us, Frimmel is entitled to a *Franks* hearing to challenge the existence of probable cause to support the warrants.

¶43 We therefore accept jurisdiction, reverse the trial court's denial of Frimmel's request for a *Franks* hearing, and remand to the trial court for action consistent with this Opinion. If Frimmel is able to prove

some or all of the averments or omissions were made knowingly, intentionally, or recklessly, the trial court must determine whether the corrected affidavits are sufficient to support a finding of probable cause for the warrants. If so, the searches were proper. If not, the evidence obtained from the improper search or searches must be suppressed.



Ruth A. Willingham · Clerk of the Court
FILED: gsh