NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellant,*

*v.*

ROBERT WILLIAM BLACKWELL, *Appellee.*

No. 1 CA-CR 18-0214
1 CA-CR 18-0215
(Consolidated)
FILED 4-18-2019

---

Appeal from the Superior Court in Maricopa County
No. CR 2017-000532-001
CR 2017-005605-001
The Honorable Jose S. Padilla, Judge

**AFFIRMED**

---

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Robert E. Prather
*Counsel for Appellant*

Maricopa County Public Defender's Office, Phoenix
By Mark E. Dwyer
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Jennifer M. Perkins joined.

---

**B R O W N**, Judge:

¶1    The State challenges the superior court's decision to grant Robert Blackwell's request for an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), and the court's subsequent suppression order. For the reasons that follow, we affirm.

## BACKGROUND

¶2    On September 3, 2015, Officer Newton requested a search warrant for Blackwell's residence, asserting he had probable cause to believe Blackwell—a prohibited possessor—was committing the crime of misconduct involving weapons. In relevant part, Newton's affidavit stated he had been contacted by Special Agent Wilbur of the Federal Bureau of Investigation ("FBI") and

> SA Wilbur relayed the following information to your affiant that he learned from the Confidential Informant [("CI")] deemed reliable by the FBI[.]

> On August 29, 2015, an unknown person or persons fired five rounds at Blackwell's residence . . . during the early morning hours. Following the gunfire, Blackwell ran out to the front of his home . . . carrying an AR-15 style rifle and a .380 handgun. The AR-15 style rifle is described as a Mossberg brand, all black, with a scope and bipod. The .380 was described as a Bersa brand, silver, with a black handle. SA Wilbur informed your affiant the firearms were still located inside the residence within the last 48 hours.

Newton also explained that through a field interrogation report he corroborated the fact that a shooting had occurred on August 29, 2015.

¶3    The warrant was issued and later expanded by amendment when, in addition to finding the prohibited weapons, officers found evidence of drug use in Blackwell's home. In CR2017-000532-001, the State

charged Blackwell with one count of possession or use of narcotic drugs and two counts of misconduct involving weapons.

¶4　　　　On March 3, 2016, Officer Newton requested another search warrant for Blackwell's residence after Special Agent Wilbur contacted him stating he "had information from a reliable Confidential Informant" that Blackwell possessed a "Smith and Wesson 9mm handgun with a serial number of HFN3910." Newton's affidavit did not include any corroborating information regarding Blackwell's possession of the Smith and Wesson handgun. The search warrant was issued and later expanded by amendment when evidence of narcotic sales was found during the search of Blackwell's residence. In CR2017-005605-001, the State charged Blackwell with one count of possession of narcotic drugs for sale and possession of drug paraphernalia.

¶5　　　　In each pending case, Blackwell filed a combined request for a *Franks* hearing and motion to suppress, arguing the affidavits' statements regarding the CI were either false or recklessly disregarded the truth by omitting relevant information about the CI. In response, the State argued a *Franks* hearing was unjustified because Blackwell had not met the threshold showing "that the detective made a false statement, either knowingly, intentionally, or recklessly" and, regardless, the search warrants were supported by probable cause. The superior court granted the request for a hearing.

¶6　　　　FBI Special Agent Thompson, Officer Newton, and the CI testified at the hearing. Thompson testified that he and Special Agent Wilbur recruited the CI after she and Blackwell were arrested for narcotics trafficking in June 2015. The CI agreed to provide the agents with information on "narcotics" in exchange for benefits, the precise details of which were somewhat disputed at the hearing. Thompson also testified that (1) he and Wilbur were aware the CI had ongoing issues with drug addiction; (2) the CI had not relayed unreliable information before informing on Blackwell; and (3) between June and September 2015 she had provided at a "minimum" 10 good tips.

¶7　　　　Officer Newton testified he corroborated the information Wilbur relayed to him for the initial September warrant through a field interrogation report that confirmed a shooting occurred on August 29, 2015. When asked if the report contained any information besides "shots fired," Newton responded that it said everyone at the residence was okay, and the shooting had been reported by a neighbor, not Blackwell. Concerning the initial March warrant, Newton testified Wilbur contacted him in late

February 2016 and told him "[t]he CI again contacted [Wilbur with] information that Mr. Blackwell was in possession of a Smith and Wesson handgun this time."

¶8        As to his familiarity with the CI, Officer Newton testified he knew the CI because she was a suspect in his June 2015 investigation of Blackwell, and he knew she was Wilbur's CI for the search warrants at issue. When asked on cross-examination whether he knew the CI was a reliable source, Newton stated the CI's reliability was "deemed by the FBI." He also responded affirmatively when asked "You had no idea why they deemed her reliable; correct?" Finally, the following exchange occurred on redirect:

> Q. [I]n regards to [the CI's] reliability, was the information [she] provided for the September search, did that turn out to be accurate?
>
> A. Yes.
>
> . . .
>
> Q. So you had some information about her reliability; just not the rest of her involvement with the FBI; is that right?
>
> A. I can only state to the reliability of the information provided by sergeant or Special Agent Wilb[u]r.

¶9        Ruling from the bench, the superior court focused on the initial September warrant and stated the "problem" is the issuing court was provided only a "blanket statement" regarding the CI's reliability. After a thorough discussion of the affidavits, the court granted the motions to suppress, explaining that "[s]imply telling us that the FBI believes that [a CI is] reliable does not cut it for the courts."

¶10        The superior court provided additional analysis in its written order, finding the initial September and March search warrants deficient because "the [commissioner] was not provided sufficient information with which to independently weigh the CI's credibility and reliability," and "[t]he Court was unable to find any law that supports the proposition, that once the 'FBI' determines a CI to be reliable, that such a finding by the FBI, or any law enforcement agency requesting a search warrant, relieves the issuing court from making its own determination." Thus, the court suppressed the evidence gathered pursuant to the initial warrants as well as "any evidence gathered pursuant to [the] execution of a second Search

Warrant on the same day which relied on the findings and execution of the first Search Warrant or . . . on [the] evidence gathered pursuant [to the] execution of the initial warrants." The court discounted the other "salient points" in the affidavit, finding they did not establish probable cause and rejected the State's argument that the evidence obtained was admissible under the good-faith exception because the "*State agents chose not to provide the issuing court with sufficient information about the CI on multiple occasions despite the fact the information existed.*"

¶11　　　　Both cases were dismissed without prejudice at the State's request. The State then appealed the suppression orders pursuant to Arizona Revised Statutes ("A.R.S.") section 13-4032(6).

## DISCUSSION

### A.　　Sufficiency of Blackwell's Hearing Request

¶12　　　　The State argues Blackwell was not entitled to a *Franks* hearing because he did not "present specific allegations pointing to a reckless disregard for the truth" and his allegations were unsupported by an offer of proof. We review whether a defendant was entitled to a *Franks* hearing de novo. *See Frimmel v. Sanders*, 236 Ariz. 232, 238, ¶ 25 (App. 2014).

¶13　　　　A magistrate or judge may issue a search warrant only if the affidavit seeking the warrant establishes probable cause. U.S. Const. amend. IV; A.R.S. § 13-3913; *State v. Carter*, 145 Ariz. 101, 110 (1985) (finding probable cause established "if a reasonably prudent person, based upon the facts known by the [affiant], would be justified in concluding the items sought are connected with the criminal activity and that they would be found at the place to be searched"). Affiants are required to provide a magistrate "with a substantial basis for determining the existence of probable cause" because the magistrate's determination must be independent—it "cannot be a mere ratification of the bare conclusions of others." *Illinois v. Gates*, 462 U.S. 213, 239 (1983).

¶14　　　　If a defendant makes a "substantial preliminary showing that a false statement knowingly and intentionally, or with a reckless disregard for the truth, was included . . . in the warrant affidavit, and . . . the allegedly false statement is necessary to a finding of probable cause," *Franks*, 438 U.S. at 155–56, the Fourth Amendment entitles the defendant to an evidentiary hearing concerning whether the search warrant contains "false or incomplete information," *Frimmel*, 236 Ariz. at 239, ¶ 27 (authorizing a *Franks* challenge when "it has been shown 'a warrant affidavit valid on its face . . . contains deliberate or reckless omissions of facts that tend to

mislead'" (citation omitted)); *see Carter*, 145 Ariz. at 109 (adding deliberate or reckless omissions of material facts as grounds to support a *Franks* request). The State correctly notes that defendants may not "merely claim the affidavit constitutes [a falsity] and hope[] an evidentiary hearing" provides a basis for relief. However, a defendant's motion does not have to conclusively establish wrongdoing; rather, it must include

> allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits of sworn or otherwise reliable statements of witnesses should be furnished, *or their absence satisfactorily explained.* Allegations of negligence or innocent mistake are insufficient.

*Franks*, 438 U.S. at 171 (emphasis added).

¶15        Blackwell alleged the CI's tips were the only factual bases establishing probable cause for the belief that he was in possession of the guns subject to the initial search warrants in September and March. Blackwell supported these allegations by bracketing the portions of the affidavits stating the CI was reliable and those relying on the CI's tip. He also alleged the affidavits omitted information calling into question the CI's reliability, such as the CI's inexperience, the fact she was receiving compensation in the form of money and/or reduced criminal charges, and she was a heroin addict. As for affidavits or the lack thereof, Blackwell explained he had attempted to discuss the CI's history with Special Agent Wilbur, who was not forthcoming, and had been unable to interview the CI because of her status as a victim in another case. Ultimately, Blackwell's requests alleged, based on the limited information available to him at that time, that the initial affidavits for the September and March search warrants omitted any information upon which the issuing court could make independent determinations regarding the reliability and veracity of the CI's tip. Thus, on this record, Blackwell made a substantial preliminary showing that portions of the affidavits contained statements that recklessly disregarded the truth and/or omitted material facts.

¶16        Because the CI's tips in the initial September and March warrants were the only factual grounds in the affidavits linking Blackwell to the prohibited weapons, the alleged omissions were necessary to the probable cause determination. *Franks*, 438 U.S. at 155–56; *see also Gates*, 462

U.S. at 238 (explaining that the probable cause determination asks "whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place"); *State v. Swanson*, 172 Ariz. 579, 585 (App. 1992) ("[P]robable cause cannot rest upon mere suspicion that a crime has occurred."). Accordingly, Blackwell met *Franks'* threshold requirements, and the court did not err in granting his request for a hearing.

### B.     The *Franks* Hearing

¶17        There are two components to a *Franks* evidentiary hearing. First, the defendant has the burden of proving the affidavit contained "perjury or [a] reckless disregard for the truth by a preponderance of the evidence." *Frimmel*, 236 Ariz. at 239, ¶ 28. If the affiant either (1) included false or recklessly untrue statements or (2) omitted material information, the court must "redraft the affidavit by deleting the falsehoods and adding the omitted material facts." *State v. Buccini*, 167 Ariz. 550, 554 (1991). Second, the court must determine whether the redrafted affidavit is sufficient to establish probable cause; if not, "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 156. We will affirm the court's determination that the affiant made false statements or recklessly disregarded the truth by omitting material facts unless clearly erroneous, but we review the "court's finding as to whether a redrafted search warrant is sufficient to establish probable cause" de novo. *Buccini*, 167 Ariz. at 555.

¶18        Here, the superior court did not use the precise language found in *Franks* or its progeny, but its rulings can be fairly read as implicitly finding that Officer Newton included false statements or omitted material information from the initial September affidavit which, citing *Wong Sun v. United States*, 371 U.S. 471 (1963), it found dispositive as to the other three warrants. *See Buccini*, 167 Ariz. at 554 n.5 (explaining it was not critical the superior court failed to use the precise language of the first prong because "[i]n suppressing under *Franks'* second prong, the [court] necessarily considered and resolved the issues under the first"). The State does not contest the court's implicit finding concerning the September affidavit nor does it challenge the court's finding that the subsequent search warrants are "fruits of the poison[ous] tree." Consequently, we also focus our analysis on the initial September affidavit.

¶19        The superior court re-evaluated the "totality of the circumstances" in the affidavit, noting the lack of information regarding the

CI's credibility and the lack of other evidence corroborating the CI's tip. *See Gates*, 462 U.S. at 238 (explaining the totality of the circumstances approach requires that the issuing court consider "all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information" when determining whether probable cause exists). After its re-evaluation, the court found the affidavit insufficient to establish probable cause because, in relevant part, there was "no evidence presented in the warrant of an ongoing enterprise involving weapons" and although Blackwell was "alleged to have been seen by someone" with the two guns "outside of his home after the shooting . . . [n]o information was provided about the individual and the circumstances under which the observations were made." Although the court did not explicitly base its ruling on a redrafted version of the initial September affidavit, we find the court sufficiently satisfied *Franks*' requirements and note the State does not contest the form of the court's analysis.

**¶20** Given the absence of a redrafted affidavit in the record, however, we find it appropriate to explain what information must be removed or inserted pursuant to *Franks* before determining the redrafted affidavit's sufficiency. First, we must remove Officer Newton's unsupported assertion that the CI was deemed reliable by the FBI. Although not technically false, Newton's use of this statement, coupled with the material omissions, constituted a reckless disregard of the truth. *See Frimmel*, 236 Ariz. at 239, ¶ 27 (explaining that an affiant cannot "manipulate the inferences a magistrate will draw" (internal quotation and citation omitted)). Moreover, as evidenced through his testimony, Newton did not believe the CI was reliable; he merely accepted that she was reliable because "it was deemed by the FBI." *See Franks*, 438 U.S. at 165 (defining a "truthful" statement as one in which "the information put forth is believed"). Next, we insert the omitted facts that undermine the CI's accounts and prevented the issuing court from making a valid, independent determination regarding the CI's account: the CI was a heroin addict at the time she provided the information, she provided the information to avoid prosecution for her own crimes, and she was compensated by the FBI/the State for being an informant.

**¶21** As redrafted, the affidavit provides that Newton had reason to believe Blackwell was committing the crime of misconduct involving weapons because the FBI told him it had received such information from an informant whose credibility is questionable at best, given the newly-added facts undermining the CI's credibility. The redrafted affidavit contains no information bolstering the CI's reliability (such as the number of times she provided reliable tips), nor does it provide pertinent

background information forming the basis for the CI's purported knowledge of Blackwell's gun possession. *See Franks*, 438 U.S. at 165 (noting the affidavit should "recite 'some of the underlying circumstances from which the informant concluded' that relevant evidence might be discovered, and 'some of the underlying circumstances from which the officer concluded . . . the informant was 'credible' or his information 'reliable'" (citation omitted)); *United States v. Bishop*, 264 F.3d 919, 924 (9th Cir. 2001) ("When a search warrant is based solely on an informant's tip, the proper analysis is whether probable cause exists from the totality of the circumstances to determine a sufficient level of reliability and basis of knowledge for the tip."). Such an affidavit is insufficient to establish probable cause to search Blackwell's residence for evidence of misconduct involving weapons.

¶22 The State asserts the totality of the circumstances supports the CI's reliability and basis of knowledge because she lived with Blackwell and she provided accurate tips for the FBI before she provided the information about him for the September warrant. The State is correct to the extent this information may have provided the issuing court an independent basis for probable cause; however, we do not include it in the redrafted affidavit. *See Buccini*, 167 Ariz. at 555 (inserting only those facts that would undermine the original affidavit's assertion); *Carter*, 145 Ariz. at 109 (same); *Frimmel*, 236 Ariz. at 241, ¶¶ 38, 39 (same); *see also* 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.4(c) at 697 (5th ed. 2012) ("[A]ddition to the affidavit is appropriate only as to omitted information tending to cast some doubt on the probable cause otherwise shown.").

¶23 Additionally, the field report Newton relied on to corroborate the CI's tip was not offered as evidence at the hearing and, based on the plain language of the affidavit and Newton's testimony, seems to corroborate only that Blackwell's residence was the subject of a drive-by shooting, not that Blackwell possessed weapons. *See State v. Altieri*, 191 Ariz. 1, 3, ¶¶ 9, 10 (1997) (explaining that corroboration "unrelated to any criminal activity" is insufficient to bolster a tip that did not contain "a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted" (quoting *Alabama v. White*, 496 U.S. 325, 332 (1990)).

¶24 In *Gates*, the Supreme Court explained that an "officer's statement that 'affiants have received reliable information from a credible person'" is insufficient to provide the "substantial basis" required for a magistrate's independent determination of probable cause. 462 U.S. at 239 (quoting *Aguilar v. Texas*, 378 U.S. 108, 109 (1964)). Here, Newton avowed

he was given information from another officer who told him the information came from his source, and Newton testified that he did not know why, or even if, the CI was reliable at the time he drafted the affidavit. *See State v. Payne*, 25 Ariz. App. 454, 457 (1976) (explaining that an officer's mere conclusions "do not provide the magistrate with any factual details upon which to base the issuance of a search warrant").

**¶25** "Reasonable minds may frequently differ on the question [of] whether a particular affidavit establishes probable cause," *Leon*, 468 U.S. at 914, and we recognize the State is correct in that courts generally prefer to enforce warrants and that "the resolution of doubtful or marginal cases in this area should be determined by the preference to be accorded to warrants," *United States v. Ventresca*, 380 U.S. 102, 109 (1965). However, this presumption does not apply when examining whether the redrafted affidavit in a *Franks* hearing establishes probable cause; instead, "it is appropriate to resolve marginal probable cause determinations in such a manner as will best uphold the integrity of the fourth amendment." *Buccini*, 167 Ariz. at 558. On this record, even if we consider Newton's statement that the CI was deemed reliable by the FBI, the superior court did not err because the redrafted affidavit provides "virtually no basis at all for making a judgment regarding probable cause." *Gates*, 462 U.S. at 239. Accordingly, each of the four warrants "must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 156.

### C.    Good-Faith Exception

**¶26** The State also argues that "[e]ven if a search warrant is later found to be invalid, the fruits of the search must not be suppressed if the officers executed the warrant in good faith," citing A.R.S. § 13-3925 and *Leon*, 468 U.S. 897 (1984). The good-faith exception does not apply when there has been a *Franks* violation, as occurred here. *See United States v. Jacobs*, 986 F.2d 1231, 1234–35 (8th Cir. 1993) (reversing a conviction after finding *Franks* violation invalidated a warrant because "under *Leon*, a *Franks* violation is not excused"); *see also Leon*, 468 U.S. at 922–23 ("Suppression . . . remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." (citing *Franks*)); *cf. United States v. Glover*, 755 F.3d 811, 814 (7th Cir. 2014) (finding "the affidavit's omission of all information about the informant's credibility is sufficient to raise an inference of reckless disregard for the truth that could undermine the good faith exception under *Leon*" and remanding for a *Franks* hearing).

## CONCLUSION

¶27      We affirm the superior court's order granting the motions to suppress.



AMY M. WOOD • Clerk of the Court
FILED:   AA