NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JOSE LEONARDO ALBA, *Appellant.*

No. 1 CA-CR 22-0506
FILED 1-30-2024

Appeal from the Superior Court in Maricopa County
No. CR2020-101481-001
The Honorable Suzanne E. Cohen, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Gracynthia Claw
*Counsel for Appellee*

Michael J. Dew, Phoenix
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Jennifer M. Perkins delivered the decision of the Court, in which Presiding Judge Andrew M. Jacobs and Judge David D. Weinzweig joined.

**P E R K I N S**, Judge:

¶1          Jose Leonardo Alba appeals his conviction and sentence for possession of drug paraphernalia. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2          We view the facts in the light most favorable to sustaining the verdict. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013). Alba lived with his Father, codefendant Jose Jimenez**.** In December 2019, Scottsdale police installed a camera on a pole outside their house ("the Residence") to capture footage of the street and driveway. In early January 2020, the surveillance revealed Evan Zurow together with Alba and Jimenez bringing a large duffle bag in and out of the Residence, storing it in the backseat of his car, and fiddling with the door panel of his car. After observing Zurow leave the Residence, Police initiated a traffic stop and searched Zurow's car with his consent. Police discovered $23,000 cash in a duffel bag and 20 Adderall pills with a ledger that said "Adderall - 150 out of 1000 - 300 trip." They also noticed the screws and insulation in the back-door panel had been removed, creating a hollowed-out space. Police searched Zurow's cell phone and saw a recent text message from Alba and a note that mentioned the address of the Residence. During a post-*Miranda* interview, Zurow stated Alba and Jimenez "loaded up his vehicle with black plastic wrapped items and placed it into his door panels," but that the Adderall pills were his and he bought them from someone else.

¶3          Police sought a search warrant for the Residence. In the supporting affidavit, Officer Ryan included information about videos of Zurow's visit to the Residence, the cash and Adderall found during Zurow's traffic stop, Zurow's statements about Alba and Jimenez, Officer Ryan's impression and experience about runners moving money, and Jimenez's prior convictions for drug sales. The affidavit did not contain Zurow's statement that the Adderall pills were his and that he bought them from someone else. The superior court commissioner found probable cause that the Residence's occupants had committed drug possession, money laundering, and conspiracy, and issued the warrant.

¶4          During a search of the Residence, officers found several packages of small plastic baggies and a safe containing $33,000 in cash bound with rubber bands which Officer Ryan testified were found in Alba's room. In Jimenez's room, police also found $176,000 cash, 981 shrink-wrapped fentanyl pills, two guns, a money counter, a scale, a vacuum

sealer, food-saver plastic wrapping, and a cell phone, which received a call from Sinaloa, Mexico at the time it was found.

¶5        The state charged Alba with possession of narcotic drugs for sale, money laundering in the second degree, and possession of drug paraphernalia. Alba and Jimenez filed a joint motion to suppress all evidence obtained as a result of the warrant and requested a *Franks* hearing. *See Franks v. Delaware*, 438 U.S. 154 (1978) (process for challenging a warrant that contains deliberate or reckless omissions of fact). They alleged that the warrant identifies no connection between the packages in the vehicle and the defendants, that Officer Ryan intentionally omitted Zurow's statements about where he obtained the Adderall pills, and that if this statement was included, the warrant would have lacked probable cause. The court denied the motion finding "that even if the omitted facts were included in the affidavit, probable cause would exist for the issuance of the warrant."

¶6        At trial, Officer Ryan opined, based on years of experience, that hollowed-out spaces in door panels are typically used to store and transport money and drugs. And he opined that "small plastic Ziploc[] baggies" were "typically used for lower street level deals to transport and to sell illegal drugs." Officer Ryan stated he did not see "anything" in Alba's room "that could legitimately be packaged into those baggies." Officer Ryan testified it was his belief the baggies were found in Alba's room, but also conceded he could be mistaken. Officer Ryan did not personally find the baggies in Alba's room, and the police report did not specify the room in which the baggies were found.

¶7        In closing statements, defense counsel argued that Alba's "mere presence" at the Residence and knowledge of illegal activity "doesn't make [him] guilty of an offense." When distinguishing the cash found in Alba's room from the cash found in Jimenez's room, defense counsel stated that "knowledge of the presence doesn't make one guilty of any illegal offense" but that the jury would not receive a mere presence instruction "[b]ecause it's not the law."

¶8        The jury found Alba guilty only on the charge of possession of drug paraphernalia. The court sentenced Alba to a mitigated term of 0.33 years with 1,029 days of presentence incarceration credit. Alba timely appealed, and we have jurisdiction. Ariz. Const. art. 6, § 9; A.R.S. §§ 12-120.21(A)(1), 13-4031, 13-4033(A).

**DISCUSSION**

## I. Motion to Suppress the Search Warrant

¶9 Alba argues the superior court abused its discretion by denying his motion to suppress and request for a *Franks* hearing. We review the denial of a request for a *Franks* hearing de novo. *Frimmel v. Sanders*, 236 Ariz. 232, 238, ¶ 25 (App. 2014) (as amended).

¶10 All search warrants must be supported by probable cause. A.R.S. § 13-3915(A), -3913, -3914(B). Probable cause exists if "given all the circumstances set forth in the affidavit before [the magistrate], including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

¶11 A defendant is entitled to a hearing on a *Franks* motion if he "makes a substantial preliminary showing (1) that the affiant knowingly, intentionally, or with reckless disregard for the truth included a false statement in the supporting affidavit, and (2) the false statement was necessary to the finding of probable cause." *Frimmel*, 236 Ariz. at 239, ¶ 27; *Franks*, 438 U.S. at 155–56. "A *Franks* challenge is also authorized when it has been shown a warrant affidavit valid on its face contains deliberate or reckless omissions of facts that tend to mislead." *Frimmel*, 236 Ariz. at 239, ¶ 27 (quoting *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985)) (cleaned up). "An affiant is not permitted to tell less than the total story to manipulate the inferences a magistrate will draw, or intentionally or recklessly omit facts required to prevent technically true statements in the affidavit from being misleading." *Id.* (cleaned up).

¶12 Alba argues that Officer Ryan intentionally omitted Zurow's statement that the Adderall was not from Alba to intentionally mislead the commissioner. He contends that including the statement would have revealed there was no connection between the packages in the vehicle and Alba. But the necessary connection for purposes of obtaining the warrant was between Zurow and the Residence. The warrant affidavit summarized the surveillance videos showing Zurow bringing the duffel bag from the Residence to his car immediately before the traffic stop, and Zurow's statement that Alba and Jimenez loaded unknown items into his door panel. This information demonstrated the necessary connection to establish probable cause for a search of the Residence.

¶13     Including the omitted statement does not defeat probable cause as to the Residence established by the other information included in the affidavit. For this reason, Alba did not satisfy the second prong of the *Franks* preliminary showing, and the superior court appropriately denied the motion to suppress and request for a *Franks* hearing.

## II.     Sufficiency of the Evidence

¶14     Alba contests the sufficiency of evidence to support his conviction for possession of drug paraphernalia. We review sufficiency of the evidence de novo and resolve all inferences against Alba. *State v. Burns*, 237 Ariz. 1, 20, ¶ 72 (2015). To obtain relief, Alba must show the record lacks "substantial evidence" supporting his conviction. *State v. Pena*, 235 Ariz. 277, 279, ¶ 5 (2014). "Substantial evidence is evidence that reasonable persons could accept as sufficient to support a guilty verdict beyond a reasonable doubt." *Id.* (cleaned up). "[W]e view the evidence in the light most favorable to sustaining the jury's verdict" and do not reweigh the evidence. *State v. Dodd*, 244 Ariz. 182, 185, ¶ 8 (App. 2017).

¶15     To support a conviction for possession of drug paraphernalia, the state must prove Alba possessed "equipment, products[, or] materials of any kind" used or intended for use in "packaging, repackaging, storing, containing, [or] concealing" an illegal drug. A.R.S. § 13-3415(A), -3415(F)(2). Drug paraphernalia includes "[c]ontainers and other objects used, intended for use or designed for use in storing or concealing drugs," A.R.S. § 13-3415(F)(2)(j), and "[c]apsules, balloons, envelopes and other containers used, intended for use or designed for use in packaging small quantities of drugs," A.R.S. § 13-3415(F)(2)(i).

¶16     To support the drug paraphernalia charge, the state presented evidence that officers found baggies in Alba's bedroom, that fentanyl pills were found elsewhere in the Residence, and that nothing else was found in Alba's room that could have been packaged in the baggies. Officer Ryan opined that the quantity of drugs, amount of cash, small baggies, and pattern of vehicles coming in and out of the Residence indicated that the "fentanyl pills were processed for sale." The jury saw photos of the baggies. And the defense presented no evidence of other uses for the baggies.

¶17     Alba contends that because Officer Ryan said he did not personally see the baggies in Alba's room, and the "report did not reflect where Exhibits 11-14 were actually located," Alba was convicted "merely because the baggies were found in the house where he was living." The jury heard Officer Ryan's testimony that he believed the baggies were located in

Alba's room, and the officer's concession that it was possible he was mistaken. And the jury found Alba innocent on other charges, while convicting him of drug paraphernalia possession. Alba asks us to reject the jury's conclusions by reweighing the officer's credibility and testimony. We cannot do so. *State v. Cox*, 217 Ariz. 353, 357, ¶ 27 (2007) ("[T]he credibility of the witnesses and the weight and value to be given to their testimony are questions exclusively for the jury."). The evidence presented at trial was sufficient to support Alba's conviction for possession of drug paraphernalia.

### III.    Mere Presence Instruction

**¶18**        Alba argues defense counsel failed to request a mere presence instruction, and the court failed to deliver the instruction, resulting in prejudice to him. This argument is essentially a claim for ineffective assistance of counsel. "[I]neffective assistance of counsel claims are to be brought in Rule 32 proceedings. Any such claims improperly raised in a direct appeal . . . will not be addressed by appellate courts regardless of merit." *See State v. Spreitz*, 202 Ariz. 1, 3, ¶ 9 (2002). We therefore cannot consider Alba's argument. There is "no preclusive effect under Rule 32 by the mere raising of such issues" and Alba may still argue this claim in a proper post-conviction relief proceeding. *Id.*

### CONCLUSION

**¶19**        We affirm Alba's conviction and sentences.



6